GEORGE CLIFTON EDWARDS, Jr., Chief Judge,
dissenting.
In this case Judge Nims, as Bankruptcy Judge in Grand Rapids, Michigan, found that the debt at issue was dischargeable in bankruptcy and Judge Gibson, as District Judge, agreed. Both held that the bankrupt was not guilty of intentional fraud. Since I find no basis in this record for holding this finding to be clearly erroneous or in any way violative of either federal or Michigan law, I dissent from the majority opinion. The reasons for my conclusion have been ably set forth in Judge Gibson’s opinion in this case as follows:
This matter has come before this Court as an appeal filed by the plaintiff seeking review of the July 24, 1980, opinion and order entered by the Honorable David E. Nims, Jr., United States Bankruptcy Judge, discharging a debt which the appellant here claims was not dischargeable under Section 17(a)(4) of the old Bankruptcy Act, 11 U.S.C. § 35(a)(4), 30 Stat. 550 (1898), as amended.
It is clear that this appeal is governed by the pre-1979 version of the Bankruptcy Act. Pub.L. 95-598, Title IV, §§ 403(a), 405, 92 *258 Stat. 2683 (1978). Accordingly, all authorities cited in this opinion will relate to the old Bankruptcy Act, 11 U.S.C. §§ 1-1255 (1898), as amended.
In considering this appeal, the Court cannot disturb or set aside Judge Nims’s findings of fact unless they are clearly erroneous. In re Albert-Harris, Inc., 313 F.2d 447 (6th Cir. 1963); Cle-Ware Industries, Inc. v. Sokolsky, 493 F.2d 863 (6th Cir. 1974), cert. denied 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 and sub nom. Whalen v. Cle-Ware Industries, Inc., 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53; In re Wyse, 296 F.2d 214 (6th Cir. 1961). See also In re Pennyrich International, Inc. of Dallas, 473 F.2d 417 (5th Cir. 1973).
Appellant contends that Judge Nims erred in concluding that appellee’s debt is not dischargeable because Michigan law created in appellee a fiduciary obligation toward appellant, the breach of which through misappropriation or defalcation would give rise to nondischargeability of the debt under Section 17(a)(4). Such a position necessarily involves a mixed question of law and fact. The legal issues hinge on the application of Michigan’s Building' Contract Fund Act, M.C.L.A. §§ 570.151— 570.153, M.S.A. §§ 26.331 — 26.333, including the defining of all elements for a civil cause of action to be maintained successfully thereunder. The factual issues focus on Judge Nims’s findings as to the degree to which appellant satisfied the elements of proving the existence of a fiduciary relationship under the Building Contract Fund Act and a breach of that fiduciary duty within the meaning of that Act. The Court will limit its plenary review of Judge Nims’s opinion and order to a reconsideration of his conclusions of law regarding the applicability of the Building Contract Fund Act in a Section 17(a)(4) setting. As indicated above, however, Judge Nims’s treatment of the facts will not be disturbed unless they are clearly erroneous, and any of his findings of fact are considered by this Court cloaked with a presumption of correctness. General Order 47; In re Souder, 449 F.2d 284 (5th Cir. 1971); In re National Furniture Co., 230 F.Supp. 130 (W.D.Ark. 1964), rev’d on other grounds sub nom. United States v. National Furniture Company, Inc., 348 F.2d 390 (8th Cir. 1965).
Judge Nims’s version of the facts affords this Court a succinct summary of the basis of the parties’ dispute:
[Appellee] was engaged as a sole proprietor in the business of constructing pole barns and other noninhabited structures. [Appellee] acted as a general contractor and would receive the payments from the property owners and undertake to pay materialmen and subcontractors.
[Appellant] sold to [appellee] from time to time building supplies and materials for use on various projects. Neither [appellant] nor [appellee] kept records as to the buildings for which particular supplies would be used. However, [appellant’s] invoices did indicate the place to which its supplies, mostly lumber, would be delivered; and it is admitted that almost all of these supplies were used on such job except those returned for credit. [Appellant furnished $11,579.75 in supplies to appellee for use by appellee on three identified jobs. Appellant received $2,000.00 as payment toward the debt evidenced by the invoices for these jobs, and $9,579.75 apparently represents the “amount due.”]
There were other suppliers[,] but [appellant] was the major supplier. The three jobs [described above] were completed and [appellee] received ... payments [totalling] $16,040.00.
Unlike the usual small contractor, [ap-pellee’s] operations were such that he would be operating several small jobs at the same time.. .. [Appellee] maintained his own labor force, and drew most supplies (other than lumber) from a central supply point. [Appellee] had done business with [appellant] for a long period of time and had paid on all other jobs. On March 13, 1978, he paid [appellant] $5,457.66 and on April 4, 1978, $3,223.17. On March 29, 1978, [one of appellee’s clients to which reference has been made above] made an advance payment of *259 $6,400. It is impossible to determine if any of these monies were used for the April 4 payment. All of the monies received by [appellee] on the said three jobs were used to pay his employees, subcontractors, and materialmen as well as overhead. It is likely that some payments on these jobs paid for labor, materials, and subcontracting on other jobs. On cross examination, [appellee] admitted that payments made to employees and other materialmen on the three jobs in question would not exceed the difference between the amounts paid by owners and the amount owed to [appellant]. It is conceded that [appellee] was not guilty of any intentional fraud.
In re Johnson, No. NG 78-01257-B-1, (W.D.Mich.1980), slip op. at 1-3.
The Michigan Building Contract Fund was enacted “to protect the people of the state from imposition and fraud in the building construction industry and to provide penalties for the violation of this act.” 31 M.C.L.A. at 542 (1967). The Act reads:
Sec. 1. In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes. ...
Sec. 2. Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part thereof, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materi-almen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court.
See. 3. The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.
M.C.L.A. §§ 570.151 — 570.153, M.S.A. §§ 26.331 — 26.333, as amended (emphasis supplied). Although the Building Contract Fund Act is a criminal statute, it has been held to apply in civil actions as well. See B. F. Farnell Company v. Monahan, 377 Mich. 552, 141 N.W.2d 58 (1966). It is clear that the underlying basis for enacting this statute lies in the problems experienced in the 1920’s concerning the building industry in Michigan. As the court in General Ins. Co. of American v. Lamar Corp., 482 F.2d 856, 860 (6th Cir. 1973), observed:
... [Speculative builders often undertook to construct projects too large for their available capital to finance, and they frequently paid suppliers and mate-rialmen on older projects with funds received as payment on more current operations. With the advent of the crash of 1929 and the consequent widespread insolvency of many building contractors, these pyramided empires also collapsed and many subcontractors and suppliers were never paid.
The purpose of the Building Contract Fund Act was explained further by a panel of the Michigan Court of Appeals in People v. Miller, 78 Mich.App. 336, 339-40, 342, 259 N.W.2d 877 (1977), a criminal case, in which the “basic thrust of the statute” was described as one of protecting “certain persons [including materialmen] from unscrupulous or underfinanced building contractors” so as to prevent “contractors from juggling funds between unrelated projects.”
*260 Appellant here challenges Judge Nims’s decision partly on the basis that his application of the Building Contract Fund Act — or his non-application, as the case may be— amounts to a frustration of the purpose of that Act. While the Court agrees with appellant that the purpose of that Act is as outlined above, this Court believes that appellant’s failure to prevail in the bankruptcy court stems from a failure of proof and not from a failure by the judge to apply the law in this case. In order to have prevailed on its Section 17(a)(4) claim, it appears to this Court that appellant was required to satisfy each of the following elements of proof: (1) The existence of a fiduciary capacity assumed by appellee under the facts and circumstances or imposed on appellee by operation of law; (2) the breach of the fiduciary obligations arising out of such a fiduciary capacity, which breach resulted from appellee’s fraud, embezzlement, misappropriation, or defalcation while acting in his fiduciary capacity; and (3) an intent to defraud appellant by virtue of appellee’s acts or omissions in this matter. This Court believes that Judge Nims’s opinion and order amounts to a decision that appellant failed to sustain its burden of proof at least as to the third of these elements, viz., a showing of an intent to defraud appellant by virtue of appellee’s acts or omissions in this matter.
The statute on which appellant relies carries with it the answer to the issues raised in this appeal. Section 2 requires proof of an “intent to defraud” in order to find a violation of one’s fiduciary obligations which might arise under Section 1. The legislature decided how this requisite “intent to defraud” might be proved in any given case when it added Section 3. Accordingly, for appellant to have prevailed below, one of the methods of proving appel-lee’s “intent to defraud” could have been to show an “appropriation by [the appellee] ... of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due ... [the appellant].” M.C.L.A. § 570.153, M.S.A. § 26.333. However, it is clear from Judge Nims’s opinion that appellant did not challenge appellee’s possible fraudulent intent. As Judge Nims stated, “It is conceded that [appellee] was not guilty of any intentional fraud ... [and there] was no claim in [this] case that there was an intent to defraud .... ” In re Johnson, supra, slip op. at 3, 8. There being no evidence from which a finding concerning “intent to defraud” could be made, and appellant’s apparently having conceded that any fraudulent intent of ap-pellee, if any, was not being alleged, Judge Nims was without recourse but to find that appellee’s acts or omissions did not amount to a violation of the Building Contract Fund Act, irrespective of whether or not Michigan law imposed on appellee a fiduciary capacity vis-á-vis appellant in this case.
The Court notes that this decision is in accord with In re Trimble, 1 Bankr.Ct.Dec. 1276, No. 74-30013 (E.D.Mich.1975). In Trimble, a district judge affirmed the ruling of a bankruptcy judge on virtually the same grounds on which this Court affirms Judge Nims. After citing Monahan, supra, for the proposition that this criminal statute affords injured parties a civil remedy as well, the Trimble opinion continues:
The decision allowed the creation of a trust for purposes of a civil action although arising under a penal statute. However, from the above quoted language, it is implied that the remedy is limited to the statutory violation of “intent to defraud.”
Accordingly, the Bankruptcy Judge determined that although a fiduciary relationship was created by [the Act], only the use of the funds with the “intent to defraud” was prohibited. The broader prohibited conduct under the Bankruptcy Act was not prescribed under the Michigan Statute. Therefore, because the trust was imposed by the Michigan Statute, the bankrupt’s conduct in breaching the trust was judged by the statutory standards of “intent to defraud.”
Black’s Law Dictionary defines [“]defraud[”] as “to practice fraud; to cheat or trick.” The Bankruptcy Judge determined from the evidence that there was no intent to defraud. Therefore, because *261 there was no breach of the statutory trust, the debt was discharged.
In re Trimble, supra, 1 Bankr.Ct.Dec. at 1277, slip op. at 2-3 (emphasis supplied). Trimble and this case are sufficiently analogous to one another as to make it impossible to distinguish the result in Trimble from the result to be reached in this case.
The Court has reviewed thoroughly the cases of Selby v. Ford Motor Company, 590 F.2d 642 (6th Cir. 1979), Parker v. Klochko Equipment Rental Co., Inc., 590 F.2d 649 (6th Cir. 1979), and In. re D & B Electric, Inc., 4 B.R. 263 (W.D.Ky.1980). While it appears that Selby, as urged by appellant in this case, may offer a great deal of guidance on many of the other issues which arose in this case, the Court need not address these matters today. In view of this Court’s holding that appellant’s apparent failure to sustain its burden of proving all elements necessary for maintaining a successful Section 17(a)(4) action in this case resulted in Judge Nims’s decision, the Court declines to offer an opinion as to Judge Nims’s reading of Selby. Since this case is resolved on other grounds, the other issues which may have existed shall be left for another day. Accordingly, the July 24, 1980, opinion and order of the Honorable David E. Nims, Jr., United States Bankruptcy Judge, in this cause is hereby AFFIRMED.
Although I believe that the District Court opinion which I have quoted in full is an adequate disposition of this case, the majority’s addition of footnote 7 requires me to add a few sentences as follows:
The concept of another chance which is fundamental to bankruptcy law was thought to be important enough by those who wrote the law of this land for it to be placed in the Constitution of the United States of America. In Article I the forefathers delegated to the Congress the right to enact laws governing bankruptcy. They said in Article I, Section 8 “The Congress shall have power ... to establish ... uniform laws on the subject of Bankruptcies throughout the United States.” (Emphasis supplied).
Those laws provide an opportunity for any person to start afresh if he or she has not been guilty of intentional fraud or defalcation. 11 U.S.C. § 35(a) (Supp.1979) supplemented by the Revised Bankruptcy Act of 1979 11 U.S.C. § 523(a)(4) (1979). In my view no interpretation of state law can eliminate this federal barrier to Cashway’s claim against Johnson.
This record simply does not present any proof of intentional fraud or defalcation nor does it indicate that any effort was ever made by Cashway to prove such.
Whether the reference to a concession on this score by Cashway was implied by the Bankruptcy Judge from plaintiff’s failure to offer proofs on this issue or whether that failure was also supplemented by specific language uttered in chambers or at the bench but not recorded, does not seem to me to be critical. In any event, my colleagues have had to rely on exceedingly strained implication said to be devised from state law rather than on proofs of intentional fraud or defalcation which are required by federal bankruptcy law.
I would affirm.