In re David VAN RHEE and Linda Van Rhee, Debtors.

BYRON CENTER STATE BANK,
Plaintiff–Appellee and
Cross–Appellant,

v.

LAKE ODESSA LIVESTOCK AUCTION,
INC., Defendant–Appellant and
Cross–Appellee.

Bankruptcy No. NG 84–02750.
Adv. No. 85–0415.

United States District Court,
W.D. Michigan, S.D.

Oct. 9, 1987.

Kooistra & Sullivan by James H. Sullivan, Wyoming, Mich., for Van Rhees.

McShane & Bowie by John Grant, Grand Rapids, Mich., for Byron Center Bank.

Mohney, Goodrich & Titta, P.C. by C. Blair Mohney, Grand Rapids, Mich., for Lake Odessa Livestock, United Community Bank, Verne Lettinga and Ralph Lettinga.

## OPINION

BENJAMIN F. GIBSON, District Judge.

## I. INTRODUCTION

This matter comes before the Court pursuant to Federal Rule of Bankruptcy Procedure 8001(a) on appeal from an Opinion of the bankruptcy court dated July 23, 1986. Specifically, Defendant–Appellant and Cross–Appellee Lake Odessa Livestock Auction, Inc. ("Lake Odessa") appeals a finding of liability for conversion against Lake Odessa and in favor of Plaintiff–Appellee and Cross–Appellant Byron Center State Bank ("Byron Center"). Byron Center appeals the bankruptcy court's denial of attorney's fees and costs pursuant to Federal Rule of Civil Procedure 11 and Federal Rule of Bankruptcy Procedure 9011. For reasons stated below, the Opinion of the bankruptcy court is affirmed.

## II. RELEVANT FACTS

The facts relevant to this appeal are, for the most part, undisputed. Debtor David Van Rhee was a dairy farmer who entered into a series of security agreements with Byron Center, starting in 1980. Van Rhee financed cattle, equipment and machinery, all subject to the various security agreements. On September 1, 1982, all of Van Rhee's security agreements with Byron Center were consolidated into one. The total amount of debt was $185,683.88, bearing interest at fifteen per cent (15%) *per annum* with monthly payments of $5,100. The relevant description of the collateral in the security agreement is as follows:

> "All Holstein cattle now owned or later acquired located at 9125 72nd Avenue, Hudsonville, Michigan 49426. At no time will there be less than 100 milk cows, 60 bred heifers, and 60 younger cows."

There was no effort to identify the cows by ear tag number or otherwise. A financing statement, filed September 7, 1982, contained a similar description. There was perfection by filing with the Register of Deeds for Ottawa County, the county where the Van Rhee farm was located.

The record also reflects that Van Rhee maintained an ongoing business relationship with Lake Odessa. Apparently the practice was that Van Rhee would buy cattle on credit and when the amount of money owed reached a certain level, a security agreement covering some of the Van Rhee cattle would be executed. This security agreement, given to Lake Odessa, would, in turn, be assigned to the United Community Bank. Upon assignment of the security agreement, Lake Odessa would be paid in full by the bank.

In November or December of 1983, Van Rhee and Vern Lettinga, a partner in Lake Odessa, discussed the possibility of selling some of Van Rhee's registered cattle. At the time the discussions took place, the cattle to be sold were located on property being leased by Van Rhee, the Pierce Avenue farm. The reason for the cattle's presence at Pierce Avenue was that the milking facilities located at that location were superior to those at 72nd Avenue. Van Rhee testified that the presence of the cattle at the Pierce Avenue farm was only temporary and that the cattle's permanent location was the 72nd Avenue farm. In addition to the registered cattle, Van Rhee also owned unregistered cattle which were permanently kept at the Pierce Street location. Those cattle are not at issue here.

After the discussion between Van Rhee and Lettinga, the registered cattle were almost immediately moved back to the 72nd Avenue property, their permanent location, in preparation for sale in March of 1984. A total of 89 cattle were to be sold at auction. At no time prior to the sale did anyone representing Lake Odessa make any attempt to check any financing statements on record for any of the Van Rhee stock. Likewise, at no time prior to the sale did Van Rhee inform Lake Odessa that the cattle to be sold were subject to Byron Center's security interest. Prior to the sale, employees from Lake Odessa went to the 72nd Avenue farm to aid in the preparation of the cattle for auction. The cattle were transported from the 72nd Avenue address for auction on March 13, 1984. Prior to the sale, Van Rhee signed a form agreement relating to the sale which indi-

cated that the cattle were collateral for debts to United Community Bank and Lake Odessa but no evidence establishing that fact was produced at trial. The cattle were sold and the proceeds of the sale, $69,851.00, after payment of commissions and transfer fees, were dispersed in the following manner:

| | |
|---|---|
| United Community Bank | $35,114.23 |
| United Community Bank | 21,072.97 |
| Lake Odessa | 10,246.90 |
| Ralph Lettinga | 3,416.90 |
| TOTAL: | $69,851.00 |

None of the sale proceeds were received by Byron Center. On December 5, 1984, David and Linda Van Rhee filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Thereafter, Byron Center State Bank notified David Van Rhee of its security interest in all dairy cows and demanded immediate payment in satisfaction of the security agreement. To resolve the matter, Van Rhee initiated this adversary action against Lake Odessa to recover the proceeds from the auction sale. Byron Center intervened as a party to the proceeding.

### III. STANDARD OF REVIEW

■ On review of a determination of the bankruptcy court, the district court cannot disturb or set aside findings of fact unless they are clearly erroneous. *In re Albert–Harris, Inc.*, 313 F.2d 447 (6th Cir.1963); *In re Johnson*, 10 B.R. 322 (W.D.Mich. 1981). However, the district court is free to make an independent examination of any question of law or mixed questions of law and fact. *In re Morweld*, No. G82–324 (W.D.Mich. Feb. 1, 1984); *Matter of Lake in the Woods*, 10 B.R. 338 (E.D.Mich.1981). The party seeking review of the bankruptcy court's determination bears the burden of proof. *In re Morweld, Id.*

### IV. ANALYSIS

#### A. LAKE ODESSA APPEAL OF LIABILITY FINDING

Lake Odessa appeals the bankruptcy judge's finding of liability for conversion on two grounds. First, Lake Odessa contests the bankruptcy judge's factual finding that the security agreement executed by Byron Center adequately describes the collateral covered. Second, Lake Odessa challenges the bankruptcy judge's legal conclusion that auctioneers may be liable for conversion. These issues will be discussed *seriatim*.

As a general proposition, conversion is an intentional tort in that the defendant's action must be wilful. *See* Restatement Torts, 2d § 223. However, under Michigan law, liability for conversion may arise even though a party possesses no actual or constructive notice of plaintiff's interest in the property. *Warren Tool Company v. Stephenson*, 11 Mich.App. 274, 161 N.W.2d 133 (1968). Likewise, agents and officers of a corporation may be liable for conversion even where they act for the corporation and even if the corporation is also liable for the tort. "Corporate officers are not excused from personal liability for conversion of another's property simply because the corporation benefits from the wrong and the officers realized no personal profit from their acts of conversion." *Id.* 161 N.W.2d at 148.

■ In the instant case, the bankruptcy judge found, and this Court also concludes, that the defendants were liable for conversion of the Van Rhee cattle in derogation of Byron Center's security interest. Although defendants challenge the adequacy of the description of collateral contained in the financing statement, the bankruptcy judge found the description "inept" but nonetheless sufficient to perfect Byron Center's interest in the collateral. He also concluded that the financing statement was sufficient to apprise third parties of the security interest in the collateral and sufficient to notify third parties that additional inquiry may have been warranted. This the defendants did not do. Indeed there was no reliance on the financing statement, since the defendants, for whatever reason, failed to make a search of the county records which might have alerted them to the existence of Byron Center's interest. Instead they proceeded to auction off the cattle and to convert the proceeds to their

own use. It is on these facts that liability was premised. The Court cannot say that either the bankruptcy judge's finding of fact or conclusion of law was erroneous. To the contrary, the Court finds that both the factual determination and its legal basis are clearly supported by the record and the applicable law. At the time of the sale, Byron Center possessed a perfected security interest in the livestock sold at auction.

■ Lake Odessa also claims the bankruptcy judge erred in imposing liability on the auction company and its employees, "innocent" auctioneers who sold property subject to Byron Center's security interest. It is Lake Odessa's position that the imposition of liability under the circumstances presented in this case is inconsistent with modern commercial practices. Under Michigan common law an auctioneer who sells property subject to a security interest is liable in conversion even in the absence of bad faith or collusion. *Kearney v. Clutton,* 101 Mich. 106, 107, 59 N.W. 419 (1894). Thus, under Michigan law, the bankruptcy judge's finding of liability was proper. Although Lake Odessa argues the antiquity of such a rule and urges adoption of a different rule of law, it is undisputed that at the time of the sale of the Van Rhee cattle, *Kearney* was, and apparently remains, the law in this jurisdiction. In addition, the Court notes that the rule imposing liability for conversion on auctioneers who, in good faith and without notice, conduct a sale of livestock subject to a security agreement is the majority view on this subject. *See* 7 *Am.Jur.2d,* "Auctions and Auctioneers," § 69, (1980). *See also United States v. Chesley's Sales, Inc.,* 523 F.Supp. 528, 529 (W.D.Penn.1981). Whether Lake Odessa had notice, either actual or constructive, is irrelevant to a finding of conversion. *Warren Tool Company v. Stephenson,* 161 N.W.2d at 147. Likewise, Lake Odessa's status as an auction company is irrelevant to a finding of liability. Once it was established that Lake Odessa arranged the sale of cattle subject to Byron Center's security interest without Byron Center receiving the proceeds of that sale, Lake Odessa became liable for conversion. The Court finds that the bankruptcy

court's finding of liability is supported by both the record in this case and the relevant law. The finding of liability is further buttressed by the undisputed fact that Lake Odessa, United Community Bank and Ralph Lettinga all benefited, either directly or indirectly, from the sale. *See Lettinga v. Agristor Leasing Credit Corporation,* 686 F.2d 442 (6th Cir.1982). Based on these facts, the decision of the bankruptcy judge assessing liability in conversion against the defendants is affirmed.

## B. BYRON CENTER'S APPEAL OF DENIAL OF COSTS AND ATTORNEY'S FEES

Byron Center appeals the bankruptcy judge's denial of costs and attorney's fees. It is Byron Center's position that the defendant's defense of this action was brought for an improper purpose, to wit: to harass or cause unnecessary delay or to needlessly increase the cost of litigation. Based on this premise, Byron Center contends it is entitled to costs and attorney's fees pursuant to Federal Rule of Civil Procedure 11, applicable to the bankruptcy litigation through Federal Rules of Bankruptcy Procedure 9011.

A review of the record and the findings of the bankruptcy judge leads this Court to conclude that the denial of fees must be affirmed. Under Federal Rule of Civil Procedure 11, sanctions are mandatory if the trial judge determines that there is no reasonable basis for a position adopted by the accused party. In each instance, the determination is to be made in light of the circumstances at the time the particular pleading, motion, or other paper was made. In reviewing the denial of fees, this Court must avoid the "wisdom of hindsight." The decision of the bankruptcy judge denying fees will not be disturbed absent clear error or an abuse of discretion. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985).

■ Rule 11 mandates the imposition of sanctions for litigation practices undertaken for "an improper purpose such as to harass or to cause unnecessary delay or

needless increase in the cost of litigation." Improper purpose may be manifested by excessive persistence in pursuing a claim in the face of numerous adverse rulings, or by obstinate conduct unwarranted by the amounts or issues in controversy. *See INVST Financial Group v. Chem–Nuclear Systems*, 815 F.2d 391 (6th Cir.1987). Again the standard is one of reasonableness under the circumstances. The attorney or his client may not escape liability because he did not intend to bring the additional delay or expense. If reasonable preparation could have avoided the expense or delay, sanctions are mandated. *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151 (3rd Cir.1986).

The accountability requirements of Rule 11 do not end with the filing of the complaint or answer. Rule 11 applies to any paper that the attorney signs throughout the course of the litigation. Fed.R.Civ. Proc. 7(b) and 11; Advisory Committee Notes. The factual and legal positions adopted must be continually re-evaluated and abandoned if they are no longer reasonable. *Whittington v. Ohio River Co.*, 115 F.R.D. 201, 209 (E.D.Ky.1987).

■ In the instant case the bankruptcy judge denied the request for sanctions. In addition to finding a lack of bad faith, the court found that there were factual disputes concerning the adequacy of description of collateral. Implicit in these findings are a determination that the litigation was not defended for an improper purpose and a determination that Lake Odessa's defense of the litigation was reasonable. The Court cannot say that the findings of the bankruptcy court constituted an abuse of discretion. To the contrary, the Court finds that the record supports the court's findings. *In re Ruben*, 825 F.2d 977, 984–85 (6th Cir.1987). Accordingly, the decision of the bankruptcy court denying Byron Center's motion for attorney's fees and costs is affirmed.