**In re Paul R. ZUNICH d/b/a Zunich's Nursery & Garden Center, and Susan L. Zunich, Debtors.**

**Bankruptcy No. 88–0029.**
**Motion No. 88–2453.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 25, 1988.

Heather S. Heidelbaugh, Messer, Shilobod & Crenney, Pittsburgh, Pa., for debtors.

Owen W. Katz, Bernstein and Bernstein, P.C., Pittsburgh, Pa., for Jackson & Perkins Co., Joseph J. Bernstein and Bernstein and Bernstein, P.C.

Robert H. Slone, Mahady & Mahady, Greensburg, Pa., Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is Debtors' Motion for Contempt against Jackson & Perkins Co., a creditor in this bankruptcy case, and Joseph J. Bernstein, Esquire and Bernstein and Bernstein, P.C., said creditor's counsel. The Motion avers that certain actions by this creditor, through its counsel, constitute willful violations of the automatic stay, subjecting both parties to liability for damages, costs, and attorney's fees, pursuant to 11 U.S.C. § 362(h). The creditor and his counsel have denied that their actions in any way violated the automatic stay. Oral argument was held and the parties have submitted post-hearing briefs on the issues of whether a violation of the stay occurred, and if in fact such a violation did occur, whether it was willful, so as to activate the provisions of § 362(h).

While the facts in this case are not complicated, the application of the law is less than clear, and subject to substantial evaluation and analysis. In point of fact, this Court has spent considerable time in weighing the issues and analyzing the available case law. Based upon same we find that a violation of the automatic stay did occur, and that the garnished funds must be turned over to the Trustee. However, we also find that the actions constituting said violation were not willful under this Court's reading of § 362(h), and therefore no award of damages will be made.

### FACTS

On May 11, 1987 creditor, by and through its counsel, filed suit against Debtors in the Court of Common Pleas of Westmoreland County. The parties entered into a Stipulation for Settlement and entry of

consent judgment for $4,266.96 on August 19, 1987.

On November 19, 1987 creditor caused a Writ of Execution to issue against Pittsburgh National Bank ("PNB"), as garnishee of funds belonging to Debtor, a depositor at PNB. The Writ was served within a week. Upon receipt of same PNB sent a registered letter to Debtors informing them of the execution.

Two (2) weeks later, on December 11, 1987, PNB responded to the creditor's interrogatories in aid of execution. There is no indication that PNB, as garnishee, raised any defense on behalf of Debtors. On December 31, 1987 the creditor obtained a judgment against PNB; no action was taken to execute on said judgment.

Debtors filed a Chapter 7 bankruptcy petition on January 6, 1988. On that same date Debtors' counsel called creditor's counsel and the Westmoreland County Sheriff to notify them of the bankruptcy filing.[1] A confirmation letter was sent later that day.

On January 7, 1988 PNB issued a cashier's check to creditor's counsel in the sum of $4,177.88, which counsel promptly deposited in its trust account. Debtors' counsel sent a letter to creditor's counsel on January 8, 1988, reminding counsel of the bankruptcy filing and the necessity for return of the garnished funds. Six (6) days later Debtors' counsel sent a follow-up letter to creditor's counsel, requesting immediate return of the garnished funds, as well as reimbursement of an $85.00 legal fee charged to Debtors by PNB as a result of the garnishment proceedings. On January 20, 1988 creditor's counsel responded, acknowledging receipt of the check and deposit of same. However, counsel asserted that no improper actions had been taken and directed Debtors' counsel to proceed as they saw fit.

Thereafter Debtors' counsel contacted the interim Trustee, advising him of the present state of affairs. The Trustee then sent letters both to creditor's counsel and PNB's counsel, advising that the sums disbursed and withheld must be immediately turned over to him, along with reimbursement of the $85.00 PNB fee. On February 1, 1988 Debtors' counsel again sent a letter to creditor's counsel requesting a return of the garnished funds, wherein counsel stated:

I *do not* believe there was any accusation that your firm *improperly* caused PNB to issue the check ... It appears that PNB simply issued the check in the course of business as the result of the Writ of Execution that was filed *prior* to the bankruptcy.

Your deposit of the check is an *understandable mistake* ...

We trust that you will return the funds *to us or to the Trustee* to correct the mistake ...

(emphasis added).

Debtors' Motion for Contempt, filed on April 25, 1988, asserts a claim of $5,450.38, including reimbursement of the garnished funds ($4,177.88), the fee charged by PNB ($85.00) and attorney's fees incurred as a result of the alleged violation ($1,187.50).

## ANALYSIS

■ The automatic stay of § 362 serves two (2) functions: to provide the debtor with a "breathing spell" without pressure from his creditors, and to assure the orderly administration of the case and distribution of assets to creditors. Creditor's counsel has questioned Debtors' standing to bring this action; he asserts that this cause of action belongs to the Trustee. At least one court has held that the trustee, and not the chapter 7 debtor, is the party having standing to prosecute stay violations. *Matter of Lee*, 40 B.R. 123 (Bankr.E.D.Mich. 1984). However, the court in *Matter of Schwartz*, 54 B.R. 321 (Bankr.W.D.Wis. 1985) found that the debtor may have standing in certain situations. In *Schwartz* the debtor had claimed his exemption in the funds obtained by the credi-

---

**1.** Creditor had scheduled Debtor's property for Sheriff's Sale on January 7, 1988, precipitating this bankruptcy filing on January 6, 1988.

tor through execution. The court found the debtor did have standing to bring a claim under § 362(h) as a result of his alleged individual financial injury.

In the case at bar we have no testimony regarding the Debtors' potential interest in the garnished funds; however we need not reach that point to find standing in this case. The trustee, by letter of January 26, 1988, advised creditor's counsel of the estate's interest in this fund and directed that same be forwarded to his office. Additionally, Debtors' counsel has acquiesced in the turnover of said funds to the Trustee, in his letter of February 1, 1988. Both parties therefore acknowledge that these funds are property of the estate, subject to control by the Trustee. We can find no reason to thwart the Debtors' actions when same would necessarily be brought by the Trustee.

Turning to the main issues before this Court, Debtors have alleged that creditor and his counsel have violated the automatic stay by retaining the garnished funds and depositing same in an account. Debtors direct our attention to §§ 362(a)(1) and (6), which state in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under § 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the ... continuation, including the ... employment of process, of a ... proceeding against the debtor that was ... commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ...

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title ...

Creditor has argued that the receipt and deposit of the cashier's check from PNB does not constitute a continuation of the garnishment proceedings or an action to collect, assess or recover a claim. Specifically, creditor claims that if an action were taken in violation of the automatic stay, same occurred when PNB debited Debtors' account and prepared the cashier's check.[2] Creditor further asserts that it took no action postpetition; all garnishment proceedings against *Debtors* were completed prepetition. In fact, the judgment obtained by creditor on December 31, 1987 was against PNB individually; creditor argues that that judgment was not an action taken against the Debtor at all. From that point forward, creditor suggests its actions were directed against PNB as a separate and distinct entity.

Furthermore, creditor's counsel avers that its action in depositing the cashier's check is excepted from the automatic stay provisions pursuant to § 362(b)(11). That section states:

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

(11) under subsection (a) of this section, of the *presentment of a negotiable instrument* and the giving of notice of and protesting dishonor of such an instrument.

(emphasis added).

By logical progression, creditor asserts that if presentment of a negotiable instrument for payment is not a violation of the stay, deposit of same is analogously excepted.

▮ The stay of § 362 is extremely broad in scope; aside from the limited exceptions of subsection (b), the stay applies to almost any type of formal or informal action against the debtor or estate property, by any entity. *Ellison v. Northwest Engineering Co.,* 707 F.2d 1310 (11th Cir. 1983); *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446 (3rd Cir.1982); *Collier on Bankruptcy,* Vol. 2, ¶ 362,04. (15th ed.).

The wording of subsection (a)(6) is very similar to subsection (a)(1); however, sub-

---

**2.** While we have no testimony on the issue, we presume, based upon PNB's registered letter to Debtors, that PNB issued the cashier's check based upon funds withdrawn from Debtors' account.

section (a)(6) applies to any "act" whether or not it is related to a proceeding. The type of activity prohibited ranges from informal telephone contact and dunning letters to the more formal type of proceedings, prohibited by § 362(a)(1). *See Collier, supra.*

The actions by creditor in depositing and withholding the garnished funds are a violation of the automatic stay, *unless* they fall within a specific exception. Any exception to this broad prohibition must be interpreted very narrowly. Creditor asserts that the exception codified at § 362(b)(11) removes its action from the scope of §§ 362(a)(1) and (6). We disagree. Our narrow reading of § 362(b)(11) would encompass only those voluntary instruments proffered by the Debtor pre-petition. The funds transferred by PNB via a cashier's check were distributed in response to the garnishment proceedings. Regardless of who initiated the removal of the funds, the transfer to this creditor was *not* accomplished with the agreement of the Debtors. Therefore, any continued withholding of those funds is an act to collect, assess or recover a claim against the Debtors that arose prepetition and is a separate violation of the stay.

Having so stated, we must now determine if this violation is subject to the sanctions of § 362(h). Section 362(h) was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), Pub.L. No. 98–353. and states as follows:

> (h) An individual injured by any *willful* violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages.

(emphasis added.)

■ A violation of the automatic stay will not support a finding of contempt and/or damages and fees, in all cases. *In re Aponte*, 82 B.R. 738 (Bankr.E.D.Pa. 1988); *In re Whitt*, 79 B.R. 611 (Bankr.E. D.Pa.1987); *In re Wagner*, 74 B.R. 898 (Bankr.E.D.Pa.1987); *In re La Tempa*, 58 B.R. 538 (Bankr.W.D.Va.1986); *In re Mack*, 46 B.R. 652 (Bankr.E.D.Pa.1985). Sanctions for contempt are inappropriate under the Bankruptcy Code where a mere technical violation of the stay has occurred or where the litigant has acted in good faith. In such an instance there is an absence of that element of willfulness or maliciousness usually required before a court will issue sanctions. *In re Red Ash Coal & Coke Corp.*, 83 B.R. 399 (W.D.Va. 1988); *In re La Tempa, supra; In re Cox*, 53 B.R. 829 (Bankr.M.D.Fla.1985); *In re Freunscht*, 53 B.R. 110 (Bankr.D.Vt.1985). Several courts have held that subsection (h) requires conduct which "flaunts the jurisdiction and integrity of the court", reading "willful violation" to mean a deliberate and intentional act done with the knowledge that the act is in violation of the stay. *Matter of Mullarkey*, 81 B.R. 280 (Bankr. D.N.J.1987); *In re Mewes*, 58 B.R. 124 (Bankr.D.S.D.1986); *In re Forty–Eight Insulations, Inc.*, 54 B.R. 905 (Bankr.N.D.Ill. 1985); *In re Tel–A–Communications Consultants, Inc.*, 50 B.R. 250 (Bankr.D.Conn. 1985).

■ Each violation of the stay must be considered in its entirety, with due consideration of the underlying facts, prior to a levy of sanctions. *In re Ramage*, 39 B.R. 37 (Bankr.E.D.Pa.1984). In order to prevail on an action for contempt, the moving party must prove his case by clear and convincing evidence. *In re Wagner, supra; In re Mack, supra.*

■ In those cases where courts have held that the creditor's violation was willful, the behavior has been egregious; at the very least, the creditor has participated in an *aggressive* or *active* role, clearly in violation of the automatic stay. *See Budget Service Co. v. Better Homes of Virginia*, 804 F.2d 289 (4th Cir.1986) (self-help reclamation of one vehicle and attempted further repossessions with the assistance of an armed associate); *In re Aponte, supra* (continued court action by landlord for rent arrearages and purposeful disruption of heat and water services during the winter months); *Matter of Mullarkey, supra* (continued pursuit of Sheriff's Sale on Chapter 13 Debtor's property even though

confirmed Plan provided for cure of arrearages); *In re Locasico,* 77 B.R. 932 (Bankr. S.D.Fla.1987) (postpetition repossession of debtor's automobile); *In re Wagner, supra* (action by creditor, four months postpetition, bursting into debtor's home, shutting the lights, and in the darkness, holding up a finger to the debtor's head (as if he were holding a gun), threatening to kill the debtor); *In re La Tempa, supra* (postpetition repossession of debtor's van).

Similarly, in cases where the facts are such that the very question of whether a violation occurred is a significant issue, sanctions have not been awarded. *See Morgan Guaranty Trust Company v. American Savings and Loan Association,* 804 F.2d 1487 (9th Cir.) *cert. denied —* U.S. ——, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987) (postpetition presentment of negotiable instrument received prepetition, involving no coercion or harassment); *In re Smith,* 81 B.R. 888 (Bankr.W.D.Mich.1988) (complicated divorce settlement, further complicated by the bankruptcy filing of one ex-spouse); *In re Forty–Eight Insulations, Inc., supra* (creditor's argument relating to pursuit of claim against debtor's insurer). In the *Smith* case, the Court acknowledged the complexity of the issues as follows:

> This has not been an easy proceeding to decide ... All of the judges and law clerks of this court have had an input into the final decision. If these supposed experts in the field of bankruptcy law had so much difficulty with this, how can a judge expect a layman to be aware of the many facets to be considered?

*Smith,* 81 B.R. at 897.

In the instant case we find no willful violation of the automatic stay. Creditor's counsel proceeded under the belief that his actions were excepted from the automatic stay. This Court's exhaustive research has found no previously decided cases on point from which creditor might have taken guidance. Even the foremost treatise in this area, *Collier on Bankruptcy,* provides no direction relating to § 362(b)(11). This Court believes creditor's actions were conducted in good faith; there was no conduct which "flaunts the jurisdiction and integrity of the court." Even Debtors' counsel has acknowledged in his correspondence that he does not believe creditor's counsel acted improperly, and that the actions were an understandable mistake. Creditor did not act with the clear knowledge that its actions were violative of § 362; nor have its actions been egregious or aggressive.

As stated previously, this Court's decision that creditor's actions were in violation of the automatic stay did not come easily, nor does any prior case law or treatise provide a clear cut answer. To paraphrase the court in *Smith, supra,* if we, as the supposed experts in this area had difficulty reaching our decision, we cannot expect laymen, or even practiced counsel, to know with any certainty, the impropriety of their actions.

Because we find no *willful* violation of the automatic stay, no damages will be awarded.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 25th day of July, 1988, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that Jackson & Perkins Co. and/or Joseph J. Bernstein, Esquire and/or Bernstein and Bernstein, P.C. are directed to turn over the sum of $4,177.88 to the Trustee, Robert H. Slone, Esquire, within seven (7) days of receipt of this Order. No damages, costs or fees are awarded.