**In re James G. KOLBERG and Lisa Kolberg, Debtors.**

**James G. KOLBERG and Lisa Kolberg, Appellants,**

v.

**AGRICREDIT ACCEPTANCE CORPORATION, Appellee.**

**Bankruptcy No. HL–94–85676. Adversary No. 94–8465.**

United States District Court, W.D. Michigan, Southern Division.

July 2, 1996.

Richardo I. Kilpatrick, Shermeta, Chimko & Kilpatrick, Rochester Hills, MI, for appellants.

Richard C. Walsh, Walsh & Walsh, P.C., Kalamazoo, MI, for appellee.

## OPINION

QUIST, District Judge.

This is an appeal from the United States Bankruptcy Court. The appellant/debtors, James and Lisa Kolberg, challenge the Bankruptcy Court's Opinion of August 24, 1995, and Order dated October 10, 1995, on two grounds. First, the Kolbergs contest the Bankruptcy Court's ruling that appellee Agricredit Acceptance Corporation (hereinafter "Agricredit") did not breach its legal duty to use good faith and reasonable care when storing seized goods following Agricredit's execution of a lien on the Kolberg's soybean crops. The Kolbergs also challenge the Bankruptcy Court's holding that Agricredit committed only a technical violation of the automatic stay provisions of 11 U.S.C. § 362(a)(2).

### Statement of Facts

Appellants Jim and Lisa Kolberg are farmers. In 1991, they purchased and leased farming equipment from appellee, Agricredit. Following a crop failure during the Summer of 1992, the Kolbergs were unable to make timely payments to many creditors, including Agricredit. As a result, Agricredit brought suit in state court and obtained a judgment for $334,000. In the Fall of 1994, Agricredit seized the Kolberg's soybeans pursuant to a crop lien issued on the state court judgment.

On December 9, 1994, Agricredit began to execute its lien on the Kolberg's soybeans.

Agricredit completed the execution of the soybeans on December 15, 1994. The first issue in this case concerns the amount of soybeans that Agricredit seized during this time period. The Kolbergs contend that the maximum capacity of the storage bin for the soybeans is thirty-eight thousand five hundred eighty-four (38,584) bushels and that the bin was full at the commencement of the execution. Following the filing of a Chapter 12 bankruptcy petition by the Kolbergs, Agricredit returned a total of twenty-one thousand seven hundred (21,700) bushels of soybeans to the bankruptcy trustee, Joseph Chrystler. The trustee also recovered the proceeds from an additional five thousand four hundred (5,400) bushels that Agricredit had failed to remove from the storage bin. The Kolbergs allege that they are unable to account for the remaining eleven thousand five hundred (11,500) bushels of soybeans, and that Agricredit should be held liable for the missing bushels.

The Kolbergs filed their Chapter 12 bankruptcy petition on December 16, 1994, and promptly notified appellee Agricredit of the filing. On December 19, 1994, the Kolbergs filed an adversary proceeding in Bankruptcy Court, seeking to compel turnover of the soybeans from Agricredit. At trial, the Chapter 12 trustee testified that he received the soybeans from Agricredit in April, 1995. The trustee subsequently sold the soybeans and has continued to retain the proceeds on behalf of the Kolbergs' estate. The Kolbergs contend that by failing to turn over the soybeans until April 1995, Agricredit willfully violated the automatic stay provisions of 11 U.S.C. § 362(a)(3) by continuing to exercise control over property of the estate.

### Standard of Review

■ On an appeal from a bankruptcy court, the district court assesses the findings of fact by the bankruptcy court under the "clearly erroneous" standard but subjects the bankruptcy court's conclusions of law to *de novo* review. *In re Charfoos,* 979 F.2d 390, 392 (6th Cir.1992).

> On review of a determination of the bankruptcy court, the district court cannot disturb or set aside findings of fact unless

they are clearly erroneous. However, the district court is free to make an independent examination of any question of law or mixed questions of law and fact. The party seeking review of the bankruptcy court's determination bears the burden of proof.

*In re Van Rhee,* 80 B.R. 844, 846 (Bankr. W.D.Mich.1987) (citations omitted).

### Discussion

### I. Duty of Care

■ On appeal, the Kolbergs contend that the Bankruptcy Court committed reversible error when it held that Agricredit was not liable for the missing soybeans. The Kolbergs correctly maintain that Agricredit had a legal duty to use reasonable care following the seizure of the soybeans. *See Wayne Bank v. Dore,* 119 Mich.App. 634, 636, 326 N.W.2d 588 (1982). However, the Bankruptcy Court concluded that Agricredit did not breach this duty. Following an analysis of the case, this court is unable to conclude that the Bankruptcy Court's findings of fact were clearly erroneous. To the contrary, there is a substantial amount of evidence to sustain the Bankruptcy Court's determination that Agricredit has returned the entire amount of soybeans seized during the execution of the crop lien.

At trial, Agricredit presented evidence supporting the proposition that the storage bin was not full when the execution began. An Agricredit employee testified that on December 6, 1994, three days before the execution began, she followed two trucks carrying soybean grain from the Kolberg farm to a storage facility in Indiana. After arriving at the storage facility, the Agricredit employee was informed that the grain had been stored under the name Heartland Agricultural Services. Furthermore, once the execution began, the Kolbergs delivered soybean grain to Zeeland Farm Services on December 12, 1994. This grain was stored under the name Leonard Kolberg, Sr. Although the Kolbergs contend that the grain did not come from their storage bins, a representative from Zeeland Farm Services testified that following this delivery, appellant Jim Kolberg

called the representative and requested a direct cash payment for the two loads.

In his bench opinion, the Bankruptcy Judge held that the issue of the missing grain presented a question of credibility. The judge found the testimony submitted by Agricredit to be more credible and suggested that any missing grain resulted from the deliveries by the Kolbergs to Indiana and Zeeland. Although he characterized the execution as "sloppy", the bankruptcy judge concluded that the Kolbergs had failed to meet their burden of proof that Agricredit had failed to use reasonable care when storing the seized soybeans. The deliveries to Zeeland and Indiana provide sufficient evidence to indicate that the bin was not full when Agricredit began to seize the soybeans.

## II. Automatic Stay

The Kolbergs also contend that Agricredit willfully violated the automatic stay provisions of 11 U.S.C. § 362. This section of the Bankruptcy Code prohibits a creditor, following the filing of a bankruptcy petition, from "taking any act to obtain possession of property of the estate or of property from the estate or to *exercise control over property of the estate.*" 11 U.S.C. § 362(a)(3) (emphasis added). Section 542 of the Bankruptcy Code requires a creditor in possession of estate property that the trustee may use, sell, or lease to turn over that property to the trustee following the filing of a bankruptcy petition, unless the property is of inconsequential value or benefit to the estate. 11 U.S.C. § 542(a). If a creditor fails to turn over estate property, 11 U.S.C. § 362(h) provides the following statutory remedy for violations of the automatic stay:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

■ In this case, the Kolbergs filed an adversary proceeding on December 19, 1994, to compel turnover of the soybeans. At trial, the trustee testified that he received the soybeans in April, 1995. The bankruptcy judge held that Agricredit's failure to turn over the soybeans amounted to a "technical violation" of the automatic stay provisions. The Kolbergs urge this court to find, as a matter of law, that Agricredit's actions constituted a willful violation of the automatic stay, and to sanction Agricredit as a result.

The Kolbergs rely principally on the case of *In re Knaus.* In that case, the plaintiff/debtor purchased certain merchandise from a lumber company on credit. *In re Knaus,* 889 F.2d 773, 774 (8th Cir.1989). Upon nonpayment, the lumber company obtained a judgment in state court and proceeded to seize grain and equipment belonging to the debtor. *Id.* The debtor subsequently filed for bankruptcy. *Id.* He then notified the creditor of the filing and demanded the return of his property. *Id.* The creditor refused to comply and the debtor filed an adversary proceeding with the bankruptcy court for the return of the property. *Id.* On appeal, the Eighth Circuit held that when a creditor has knowledge of the bankruptcy petition the failure to automatically turn over property of the estate constitutes a willful violation of the automatic stay. *Id.* at 775. Other courts have also relied on the creditor's knowledge of a bankruptcy petition alone as a sufficient basis to find a willful violation of the automatic stay. *See, e.g., In re Abrams,* 127 B.R. 239 (9th Cir. BAP 1991); *General Motors Acceptance Corp. v. Ryan,* 183 B.R. 288 (M.D.Fla.1995).

The *Knaus* decision and its prodigy, however, are not binding precedent for this court. Significantly, several other courts have rejected the reasoning employed by the *Knaus* court and have found that a willful violation requires more than a mere showing that the creditor had knowledge of the bankruptcy petition. *See, e.g., In re Young,* 193 B.R. 620 (Bankr.D.Dist.Col.1996) (failure to immediately turn over property rightfully seized prepetition is not a violation of the automatic stay); *In re Zunich,* 88 B.R. 721 (Bankr.W.D.Pa.1988) (willful violation requires element of maliciousness or bad faith); *Matter of Van Riper,* 25 B.R. 972 (Bankr. W.D.Wis.1982) (notice of bankruptcy petition by itself is not a sufficient basis to award sanctions). Generally, most courts have held that a willful violation requires proof that the

creditor demonstrated "egregious, intentional misconduct." *In re Sielaff,* 164 B.R. 560, 573 (Bankr.W.D.Mich.1994) (citing *U.S., Farmers Home Admin. v. Ketelsen,* 880 F.2d 990, 993 (8th Cir.1989)). In this case, there is no evidence that Agricredit acted egregiously, or in bad faith. Instead, Agricredit justifiably retained possession of the soybeans to protect its security interest in the crop. After obtaining adequate protection for its security interest, Agricredit no longer withheld the soybeans. The Chapter 12 trustee testified that Agricredit turned over the soybeans upon court order in April. Therefore, punitive damages would be inappropriate in this case.

To award damages under 11 U.S.C. § 362(h), the court must find a willful violation of the automatic stay. In this case, Agricredit committed only an inadvertent, or technical violation of the automatic stay. However, even if the Kolbergs were able to show a willful violation of the automatic stay, they have been unable to quantify any actual damages. An award of damages based upon civil contempt should not be speculative or conjectural. *Archer v. Macomb County Bank,* 853 F.2d 497, 499 (6th Cir.1988); *In re Seal,* 192 B.R. 442, 456 (Bankr.W.D.Mich. 1996). In the instant case, the Kolbergs have presented insufficient evidence to support an award of actual damages. In the fall of 1994, before filing for bankruptcy, the Kolbergs canceled a contract that would have paid them $5.40 a bushel for their soybeans. At the time they canceled this contract, the prevailing market price for soybeans was $5.02 a bushel. The trustee, after acquiring the soybeans, sold them for $5.80 a bushel. Thus, the Kolbergs are unable to claim that they received an inadequate price for the soybeans.

Furthermore, as the bankruptcy judge noted, the only claim for damages presented by the Kolbergs was "some vague statement that the debtor was not allowed to farm this year." At trial, the Kolbergs testified that they suffered huge losses during the summer of 1992. The execution of the crop lien, however, did not take place until December 1994. Following the execution, the Kolbergs filed for bankruptcy. This filing suggests that the summers of 1993 and 1994 were also not profitable for the Kolbergs. As a result, it would be highly speculative to award the Kolbergs any potential damages for the summer of 1995 when they were unable to provide evidence of profitable yields from the three preceding summers.

Several courts have awarded attorneys' fees for a technical violation of an automatic stay. *See, e.g., In re Conti,* 42 B.R. 122 (Bankr.E.D.Va.1984); *In re Gray,* 41 B.R. 759 (Bankr.S.D.Ohio 1984); *In re Crabtree,* 31 B.R. 95 (Bankr.S.D.Ohio 1983). In this case, however, this Court finds that Agricredit, as a matter of law, was entitled to relief from the automatic stay. 11 U.S.C. § 362(d) provides that the court shall grant some form of relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property." Under this section, when a creditor can show that his interest in the estate property has not been afforded adequate protection, he will not be required to turn over the property in question until the issue of adequate protection is resolved. *In re Young,* 193 B.R. 620, 624 (Bankr.D.D.C.1996).

In the instant case, Agricredit executed its lien precisely because the Kolbergs had not afforded Agricredit adequate protection in the soybean crop. Before the execution occurred, the evidence presented at trial indicates that the Kolbergs took active measures to avoid the lien on their soybeans. An Agricredit employee testified that in 1993, Agricredit held a lien on the Kolbergs' soybean crops. To avoid the lien, the crops were sold under the name Rita Kolberg. During that same year, Zeeland Farm Services issued checks to appellant Jim Kolberg for his soybean crop with Agricredit listed as co-payee. An Agricredit employee testified that the Kolbergs cashed these checks without obtaining Agricredit's endorsement on the checks, and that Agricredit did not receive any of the proceeds from the sale of the soybeans.

The evidence indicates that the Kolbergs continued to circumvent the lien on their soybean crop in 1994. On December 6, 1994, two trucks delivered soybeans from the Kolbergs' farm to a storage facility in Indiana.

These soybeans were delivered under the name of Heartland Agricultural Services. In a deliberate attempt to avoid the crop lien, the Kolbergs also sold these soybeans for cash. Furthermore, an employee of Zeeland Farm Services testified that in the fall of 1994 the Kolbergs canceled a contract to sell 100,000 bushels of soybeans at $5.40 per bushel when the prevailing market rate was $5.02 per bushel. The employee also testified that Zeeland Farm Services had knowledge of the crop lien, and had the contract been honored, Agricredit would have received the proceeds from the sale. The logical inference to be drawn is that the Kolbergs canceled a favorable contract to avoid the crop lien. The same employee, whom the Bankruptcy Court found to be "very credible," also testified that on more than one occasion, Jim Kolberg asked Zeeland Farm Services to pay him cash for his soybeans crops to avoid the crop lien.

The trial testimony lends substantial credibility to Agricredit's assertion that it began to execute on the crop lien to protect its interest in the crops. Because Agricredit justifiably believed that its interest in the property of the estate was in jeopardy only three days before the filing of the bankruptcy petition, it is difficult to imagine how the filing of the bankruptcy petition provided Agricredit with adequate protection of its interest in the soybean crop. As a matter of public policy, it would be illogical to require a secured party to relinquish its security interest in a soybean crop due to the filing of a bankruptcy petition. By retaining the soybeans and subsequently turning them over to the trustee, Agricredit was able to protect its interest in the estate property without causing any actual damage to the Kolbergs. By finding a violation of the automatic stay, the court would be forced to give an inadequate amount of protection to the rights of the creditor, while giving the debtor another opportunity to commit the acts of misconduct that initially prompted the creditor to execute on the lien. As a result, this Court adopts the reasoning employed by the *Young* court and finds that Agricredit was entitled to retain possession of the soybeans until the question of adequate protection had been resolved. Therefore, this Court finds that Agricredit did not commit a technical violation of the automatic stay, and the Kolbergs are not entitled to attorneys' fees.

 A creditor may also receive an exemption from the automatic stay when a debtor has committed acts of active malfeasance. *See In re Lipply,* 56 B.R. 524, 528 (N.D.Ind.1986); *Farmers & Merchants Bank & Trust of Watertown v. Trail West, Inc.,* 28 B.R. 389, 394 (D.S.D.1983). The trial testimony establishes that the Kolbergs actively sought to avoid the liens that Agricredit had secured in the soybean crop. These actions are malfeasance on the part of the Kolbergs. As a result, this court also holds that Agricredit was exempted from the automatic stay on the basis of debtor misconduct, and has, therefore, not committed a technical violation of the automatic stay.

Accordingly, the Bankruptcy Court's decision will be affirmed in part and reversed in part.