In re URBANCO, INC., Debtor.

Bankruptcy No. SG 90–82065.

United States Bankruptcy Court,
W.D. Michigan.

Jan. 2, 1991.

**514**

Harold E. Nelson, Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Grand Rapids, Mich., for debtor.

William R. Farran, Muller, Muller, Richmond, Harms, Myers & Sgroi, P.C., Grand Rapids, Mich., for lessor.

## AMENDED MEMORANDUM OPINION REGARDING REJECTION OF NONRESIDENTIAL REAL PROPERTY LEASE AND MOTION FOR STAY PENDING APPEAL

JO ANN C. STEVENSON, Bankruptcy Judge.

This proceeding arises in a case referred to this court by the Standing Order of Reference entered in this district on July 24, 1984 and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M). Accordingly, the court is authorized to enter final judgment in this proceeding.

Urbanco, Inc., (hereinafter "Debtor") filed for protection under Chapter 11 of the Bankruptcy Code on May 7, 1990. No trustee has been appointed, and the Debtor continues as a Debtor–in–Possession. 11 U.S.C. § 1101(1).

On its Statement of Financial Affairs for Debtor Engaged in Business, the Debtor listed R & J Development Company (hereinafter "R & J") as the lessor of business property located at 45 Barry Street, Grand Rapids. The Debtor indicated that the monthly rent of $2,383 had been paid through February leaving an amount owed at the time of filing of $7,532. On its Schedule A–3, however, the Debtor listed R & J Development Company as owed $10,078.41 for rent due since February, 1990. Finally, on its Statement of Executory Contracts, R & J Development was listed as the lessor of a building on a three year lease having an unpaid balance of $84,167.73. The court understands that figure to represent the rent due for the months remaining under the lease at the time the bankruptcy was filed.

According to Schedule A–1, the Debtor owes 941 federal payroll withholding and 940 FUTA taxes of $75,101.10 and Michigan withholding, MESC and single business taxes totalling $10,794.27.

The Debtor listed no creditors as holding secured claims on Schedule A–2 and stated on Schedule A–3 that its total unsecured debt is $863,868.24. However, on Exhibit A, the Debtor lists secured debt of $307,550.56. Finally, the Debtor completed its Summary of Debts and Property by listing total debts of $1,001,534.30 against total assets of $182,500.

The Debtor scheduled no real property. Its assets consist mainly of a station wagon, some office furniture and equipment, machinery, fixtures and equipment, supplies, two patents, a trademark, and some engineering drawings and artwork. The Debtor also lists as an asset its cause of action against A & A Electric Services/Southeastern Electric in the amount of $22,000.

No motion to assume the R & J unexpired lease of nonresidential real property, or for additional time to assume or reject, was made within 60 days after the Debtor filed for Chapter 11 relief, as is required by 11 U.S.C. §§ 365(a) and (d)(4) and Bankruptcy Rules 6006 and 9014. On August 22, 1990, 107 days after the Debtor filed its petition, R & J filed its Motion for Order Requiring Debtor–in–Possession to Surrender Leased Premises. R & J argued that since the Debtor had failed to assume the unexpired lease of nonresidential real property within 60 days after filing, the lease was rejected as a matter of law pursuant to

§ 365(d)(4), and the premises should be immediately surrendered. Approximately two months later, on October 22, 1990, the Debtor filed its Motion for Approval to Assume Lease Agreement.

Both motions were heard on November 5, 1990. The Debtor's counsel noted that on June 13, 1990 R & J sent the Debtor a letter asking for the rent arrearage, indicating it would accept $718.23 per month for 12 months to "clear up the past-due balance." The Debtor argued that the June letter was either the result of or preceded two postbankruptcy meetings between the Debtor and R & J during which the Debtor orally agreed to assume the lease on the terms set out in the lessor's June letter. The Debtor argued that its oral assertion of intent to assume, a fact which R & J disputes, coupled with the June 13, 1990 letter signed only by R & J constituted the assumption required by § 365(a) and defeats R & J's attempts to invoke § 365(d)(4). The parties did agree, however, that the Debtor did not make one monthly payment of $718.23 to cure the prepetition arrearage in compliance with § 365(b)(1)(A).

The court was not persuaded by the Debtor's argument and granted R & J's motion, noting in its November 5, 1990 bench opinion that neither the procedural requirement of timely filing a motion to assume, nor the substantive requirement of curing the prepetition default had been met. Assuming, for sake of argument only, that the Debtor had announced its intention to assume the lease to a representative of R & J, this asserted attempted assumption was wholly insufficient in light of the clear mandate of §§ 365(a) and (d)(4) and Bankruptcy Rules 6006 and 9014.

The Order requiring Debtor–in–Possession to Surrender Leased Premises on or before December 15, 1990 was subsequently entered on November 15, 1990.

On December 3, 1990 the court heard and orally granted the Debtor's November 20, 1990 motion for an extension of the time within which to appeal. Bankruptcy Rule 8002(a). The written order granting that relief was entered on December 11, 1990.

On December 7, 1990 the court *sua sponte* reconsidered its November 15, 1990 order in light of its understanding of *In re Cybernetic Services, Inc.*, 94 B.R. 951 (Bkrtcy.W.D.Mich.1989). The December 7 amending order deleted the "surrender by December 15, 1990" language from the November 15, 1990 order, leaving the rest of the order in full force and effect.

On December 10, 1990 the Debtor filed a notice of appeal as to the court's original order dated November 15, 1990 and the Amended order of December 7, 1990. On December 11, 1990 the Debtor filed its Motion for Stay of Order Pending Appeal. That motion was heard on December 14, 1990.

A motion for a stay pending appeal is governed by Bankruptcy Rules 7062 and 8005. To obtain a stay pending appeal, the moving party must establish substantially all the elements required to obtain a preliminary injunction. All of the following factors must be considered:

1. A likelihood that the parties seeking the stay will prevail on the merits of the appeal;

2. The movant will suffer irreparable injury unless the stay is granted;

3. Other parties will suffer no substantial harm if the stay is granted;

4. The public interest will not be harmed if the stay is granted.

*In re Baldwin United Corp.*, 45 B.R. 385, 386 (Bkrtcy.S.D.Ohio 1984); *accord, In re White Motor Corp.*, 25 B.R. 293, 297 (N.D. Ohio 1982); *In re Great Barrington Fair and Amusement, Inc.*, 53 B.R. 237, 239 (Bkrtcy.D.Mass.1985); *Hunter v. S.K. Austin Co. (In re Beck)*, 26 B.R. 945, 946 (Bkrtcy.N.D.Ohio 1983); *In re Hotel Associates, Inc.*, 7 B.R. 130, 131–32 (Bkrtcy.E. D.Pa.1980); *Cf. Unsecured Creditors' Committee v. DeLorean (In re DeLorean Motor Co.)*, 755 F.2d 1223, 1228 (6th Cir. 1985) (four factors regarding grant or denial of preliminary injunction); *Hamlin Testing Laboratories, Inc. v. United States Atomic Energy Comm'n*, 337 F.2d 221, 222 (6th Cir.1964) (factors to be considered

respecting motion to stay administrative order pending judicial review).

■ Based upon this Court's decision on the merits of the appealed orders, including a reconsideration of the governing statutory provisions and applicable bankruptcy rules discussed in this and the court's earlier bench opinion, it appears extremely unlikely that the debtor will prevail on the merits of its appeal.

Finally, the issue of the necessity of the debtor's timely filing a motion to assume an unexpired nonresidential lease has already been decided in this district. See, *Cybernetic*, 94 B.R. at 953 wherein the Honorable James D. Gregg clearly and unequivocally stated:

The procedure to assume an unexpired lease is a contested matter and is controlled by Bankruptcy Rule 9014. Bankruptcy Rule 6006(a). *To seek to assume a lease, the request must be made by filing a motion.* Bankruptcy Rule 9014. A motion filed to assume a lease "shall state with particularity the grounds therefore, and shall set forth the relief or order sought." Bankruptcy Rule 9013. When a motion is made to assume an unexpired lease "the court shall set a hearing on notice to the other party to the contract [lease] and to other parties in interest as the court may direct." Bankruptcy Rule 6006(c). The assumption procedure mandated by applicable bankruptcy rules recognizes and protects the due process rights of a lessor and other affected entities. *Mullane v. Central Hanover Bank and Trust Company,* 339 U.S. 306, 314, 70 S.Ct. 652, 657 [94 L.Ed. 865] (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *Cf. Verba v. Ohio Casualty Ins. Co.,* 851 F.2d 811, 815 (6th Cir.1988) (judgment creditor's specific judicial lien on real estate is constitutionally protected within the meaning of the due process clause of

the fifth amendment); 11 U.S.C. § 102(1). (Emphasis added.)

In affirming this decision the Honorable Benjamin Gibson succinctly stated:

Having reviewed the record and being otherwise advised in the premises, the court finds that the appellant did not meet the procedural requirements of title 11 United States Code § 365(d)(4) nor the substantive requirements of § 365(b)(1) with respect to the assumption of unexpired leases.

*In re Cybernetics Services, Inc.,* No. G89–30051 CA (W.D.Mich. July 6, 1989).

The Debtor argues that the factual differences between *Cybernetics* and this case are such that *Cybernetics* may not apply. While the facts of both cases are certainly not identical, they are not so different as to warrant this court's disregard of the legal issues decided in *Cybernetics*. In *Cybernetics*, several NSF checks were passed. While there have been no allegations of NSF checks made in this case, the Debtor's payment history, both pre and postpetition, has certainly been less than exemplary.

The Debtor was approximately four months behind in rent at the time of filing. Both the June and July rent was paid late. R & J disputes the Debtor's claim that it timely paid the August rent; R & J claims it never received the August rent until the court subsequently ordered it be paid along with the September and October rent which also was not voluntarily or timely tendered until this court ordered payment. To date neither the November nor December rent has been paid despite the Code's requirement that while the debtor is in possession the landlord is entitled to receive rent. *See* § 365(d)(3).

Finally, while the premises at issue here is used by the Debtor for storage and assembly of its products, the lease in *Cybernetics* was also crucial to that Debtor as it was that estate's only asset of significant value.

Debtor's counsel has brought no cases to the court's attention in which a bankruptcy court has ruled that a debtor's verbal statement of intent to assume a nonresidential

lease, without more, met the very specific requirements of § 365(a) and Bankruptcy Rules 6006 and 9013.

One of the cases cited by the Debtor did hold that the Trustee's timely oral notification was sufficient to permit the Trustee to assume an executory real estate contract. *Nostromo, Inc. v. Fahrenkrog*, 388 F.2d 82 (8th Cir.1968). *Nostromo*, however, was decided under § 70(b) of the Bankruptcy Act, 11 U.S.C.A. § 110(b), and dealt with assumption or rejection of an executory contract, including an unexpired lease of real property. Finding the oral notification adequate, the court noted "The Act does not provide any formal manner in which the trustee shall make the assumption, and in this instance the notice of assumption was made orally, but well within 30 days after the qualification of the trustee." 388 F.2d at 84. The instant case, however, is not governed by the Act, but by Bankruptcy Code §§ 365(a) and (d), and Bankruptcy Rules 6006 and 9014.

The remaining cases cited by the Debtor do not persuade me that there is any likelihood that *Cybernetics* would not be followed by the District Court on appeal.

*In re 1 Potato 2, Inc.*, 58 B.R. 752 (Bkrtcy.D.Minn.1986), the court held that the debtor's letter to the lessor sent within 60 days of filing and containing the following language effectively rejected the nonresidential unexpired lease pursuant to § 365(a):

> You may take this letter as formal notice that the debtor intends to reject the lease it has entered into with you for the store space it has occupied at Fairlane and has vacated the premises.

Judge Mahoney reasoned that the letter clearly communicated in an unequivocal manner the debtor's intent to reject. I find that Debtor made no comparable definitive communication to R & J.

In light of *Cybernetics* and the facts at issue here, it is most unlikely that this District would now do an about-face and adopt the waiver doctrine of *T.F.P. Resources, Inc.*, 56 B.R. 112 (Bkrtcy.S.D.N.Y. 1985). I agree that § 364(d)(4) can be waived by a lessor. However, it is a fundamental principle of law that a waiver means a voluntary and intentional relinquishment of a *known right* or a *known advantage* (emphasis added). *Bailey v. Jones*, 243 Mich. 159, 219 N.W. 629 (1928); *Book Furniture Company v. Chance*, 352 Mich. 521, 90 N.W.2d 651 (1958). It is undisputed that R & J was not represented by counsel until mid-August. There is no indication that by accepting the July rent—due on July 1st but tendered late and covering a portion of the post 60-day period—R & J voluntarily and intentionally relinquished its right to request immediate surrender under § 365(d)(4). *See In re Re-Trac Corp.*, 59 B.R. 251, 255 (Bkrtcy.D. Minn.1986). *Cf. In re T.F.P. Resources, Inc.*, 56 B.R. 112.

In *In re Re-Trac Corp.*, 59 B.R. 251, the bankruptcy court found insufficient as an assumption the debtor's allegations that its CEO had called the lessor within the 60-day period and stated that the debtor was going to continue to operate out of the leased premises. There is language in *Re-Trac* that the result might have been different if the debtor could prove the statement was that it intended to assume the sublease. However, this court is unwilling to speculate as to what that court's ultimate decision would be if faced with different facts. Moreover, assuming the Debtor timely verbally advised R & J that it intended to "assume the lease," the Debtor would still have to overcome *Cybernetics* as well as the requirements of § 365(b)(1)(A) with which the Debtor made no attempt to comply.

In *In re Bon Ton Restaurant and Pastry Shop, Inc.*, 52 B.R. 850 (Bkrtcy.N.D.Ill. 1985) the debtor filed its motion to assume within 60 days after the commencement of the case, thus clearly complying with both the requirements of the statute and the bankruptcy rules noted in *Cybernetics*. The only issue in *Bon Ton* was whether the court was required to hear the motion and rule within the 60 days. "By filing its motion within 60 days of the commencement of its case and presenting it for court approval within that time, Bon Ton manifested an unconditional and unambiguous

decision to assume." 52 B.R. at 854. That issue, however, is not before this court.

And *In re By–Rite Distributing, Inc.*, 55 B.R. 740 (D.Utah 1985) the debtor also timely filed its motion to assume the unexpired lease. On appeal the district court decided that the bankruptcy court was not required to both hear and decide the motion within the 60–day period, thereby overruling the bankruptcy court's decision to the contrary.

Finally, Debtor's reliance on *In re Carlisle Homes, Inc.*, 103 B.R. 524 (Bkrtcy.D. N.J.1988) is misplaced as that case dealt with debtor's timely assumption of an executory option agreement to purchase property. In finding that the debtor's letter to the option or constituted a clear communication in an unequivocal manner of its intent to assume the option, Judge Gambardella stated: "The trustee or debtor-in-possession may assume or reject an executory contract for purposes of § 365(d)(4) by clearly communicating in an unequivocal manner its intention to either assume or reject to the [offeror]." 103 B.R. at 535. *One Potato, Bon Ton Restaurant,* and *By–Rite* are cited in support of this ruling. This court is somewhat perplexed by the choice of citations since *Carlisle Homes* dealt with assumption of an executory option agreement. Accordingly, § 365(d)(4) is inapplicable as that Section is directed only to the rejection or assumption of an unexpired lease of nonresidential real property.

The argument that the stay should be granted so as to not render moot the issue on appeal ignores the necessity that the moving party be able to show a reasonable, or at a minimum, some likelihood of prevailing on the merits of the appeal.

Based on the state of the law in this district and the facts of this case, it is extremely unlikely that the Debtor will prevail on the merits of its appeal. Nevertheless, the court will address the remaining elements of stay pending appeal.

■ No testimony was presented in support of the element of irreparable harm. Debtor's counsel argued that, if required to vacate, the cost of the move alone would force it to convert to Chapter 7. R & J

countered that the leased premises consists of a warehouse facility in which the Debtor stores inventory and performs light manufacturing in the nature of assembling its products for sale. According to R & J there is no heavy machinery bolted to the building and nothing unique about the premises that would make it difficult for the Debtor to relocate. It was R & J's non-expert, though uncontested opinion, that it would take approximately two moving vans to do the job at a total cost of somewhere between $2,500 to $5,000.

Assuming the statements of both counsel to be correct, the court does not find that denial of the stay will cause the debtor irreparable harm. To explain, the Debtor offered to protect R & J during the period pending appeal by immediately paying the November and December rent, totalling $4,766, and making two payments of $718.23 into an escrow account as a start on curing the prepetition arrearage. In the event the Debtor prevailed on appeal, the escrow payments would be released to R & J. Should the Debtor not prevail the monies in the escrow account would then presumably be available to unsecured creditors. The Debtor also agreed to make all future rent payments on time, including the increased rent due in February under the lease's escalation clause, and to continue the monthly payments of $718.23 each until the prepetition arrearage is cured. If the payments were not timely made, the Debtor proposed to immediately vacate the premises without the necessity of lessor's counsel seeking court intervention.

Although R & J has rejected this offer, the court considers it for two reasons. First, if the Debtor is able to pay some $6,202 (November and December rent totalling $4,766 plus two payments of $718.23 each) and is confident that it will be able to make another payment of some $3,101 on January 1, the Debtor may then utilize this money to move to a new location. Accordingly, the Debtor will not be irreparably harmed.

■ Second, the court finds this offer is too little, too late and indeed may harm R

& J. Section 365(b)(1)(A) of the Bankruptcy Code speaks of a "prompt cure" or "adequate assurance of a prompt cure." As Congress has failed to define what "prompt" means, that time frame can vary according to the circumstances of a given case. In at least one case "prompt" cure meant an immediate payment. *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993 (Bkrtcy.E.D.N.Y.1981). In this case, commencing to pay the prepetition arrearage in monthly installments some six months after the order for relief does not comport with the requirements of § 365(b)(1)(A).

Finally, based on this Debtor's financial condition, the court believes that, as in *Cybernetics*, this arrangement will only leave R & J with an unpaid administrative claim for some or all of the pre-petition arrearage.

■ As to the third element, R & J also argues that based on past rental payment history, if the Debtor is allowed to continue in possession, R & J will likely be harmed. Apparently the Debtor's rent payment is the sole income of R & J's owner who is ill and has been unable to work for the past three months. R & J also claims to have a presently pending buy/sell agreement that requires the tenant to vacate before the transaction can close. If the Debtor fails to vacate before the scheduled closing, the sale will not be consummated. Although no testimony or proof was offered that there would be difficulty in locating another buyer should this one retract its offer, the court believes that based on the current commercial real estate market, R & J may indeed be harmed in its inability to find another purchaser.

The final element is that the public interest will not be harmed if the stay is granted. Here there appear to be competing interests. First, the public has an interest in seeing a corporation with a reasonable possibility of reorganizing continue to stay in business and employ workers. On the other hand, the public should also have an interest in insuring that debtors who elect the protection of chapter 11 comply with the explicit statutory requirements of the Code and the Bankruptcy Rules.

The court is not unmindful that denying Debtor's motion for stay pending appeal will harshly effect the Debtor. Nevertheless,

> The intention behind the congressional enactment of the 1984 Amendments was to provide lessors with more certainty about the actions of Chapter 11 debtors-in-possession. Congress intended that this Section would lessen the problems caused by extended vacancies and partial operation of space by requiring that the trustee decide whether to assume or reject the nonresidential real property lease within 60 days after the order for relief in a case under any chapter. 130 Cong.Rec. S8891, S8894–95 (Daily Ed. June 29, 1984) (Statement 598–99). The actions in this case do not provide the certainty about the debtor's intentions which Congress was hoping to secure for lessors. While the resulting effects on debtors can be devastating, Congress enacted the 1984 Amendments knowing the harsh effects and presumably intended them. It is not for courts to second guess Congress in making an obviously political decision.

*In re Re-Trac Corp.*, 59 B.R. at 256.

In conclusion, although it may now no longer be necessary, the court believes it prudent to clarify both its November 15 and December 7 orders.

> Section 365(d)(4) of the Code provides:
> (4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is a lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and *the trustee shall immediately surrender* such nonresidential real property to the lessor. (Emphasis added).

Pursuant to that language, insertion of the surrender date of December 15, 1990 in the November 15 order was inappropriate,

as the Code's unambiguous language states that "... the trustee shall *immediately surrender* such nonresidential real property to the lessor." (Emphasis added).

 In *In re Chris–Kay Foods East, Inc.,* 118 B.R. 70 (Bkrtcy.E.D.Mich.1990) the Honorable Arthur J. Spector delineated the two lines of bankruptcy cases which have developed regarding the immediate surrender language of § 365(d)(4). Aligning himself with the majority view which holds that § 365(d)(4) prevails over contrary state law, Judge Spector reasoned that the lessor of nonresidential real property is entitled to immediate possession in the event of a deemed rejection of the lease. Judge Spector cites *Cybernetics,* however, as falling within the minority view which holds that § 365(d)(4) does not mandate immediate surrender. After due deliberation, I believe clarification of *Cybernetics* is warranted. While the debtor-in-possession must immediately surrender the non-residential real property to the lessor upon deemed rejection, the lessor must enlist the aid of the appropriate state court to dispossess, if the debtor does not voluntarily comply with the court's surrender order.

The lessor can obtain an order of eviction or writ of restitution from the state court, depending on the stage the lessor finds himself in the eviction process when the bankruptcy is filed. This would seem to be both a practical as well as appropriate procedure, as the Bankruptcy Court has neither the inclination to operate as a landlord/tenant court nor does it readily have the resources available to physically evict holdover tenants.

 Of course, the Bankruptcy Court would continue to retain jurisdiction of its surrender order. If the premises are not timely vacated, then the Bankruptcy Court can enforce its order by a number of means, including but not limited to, the invocation of civil contempt under § 105(a), conversion under § 1112(b), the appointment of a trustee under § 1104 who could commence an adversary proceeding for breach of the debtor's fiduciary duties for failure to comply with court orders, and the lessor's suit for damages.

 Finally, as to the amended December 7 order, the court notes that § 362(b)(10) of the Code contains the following exception to the automatic stay:

(10) Under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that is terminated by the expiration of the stated term of the lease before the commencement of *or during a case under this title to obtain possession of such property;* (Emphasis added).

Thus by operation of law the stay was terminated when the lease was deemed rejected, and inclusion of language in the December 7 Amending Order modifying the stay to permit the lessor to proceed to state court was superfluous.

The Debtor's motion for stay pending appeal is denied. In accord with this opinion an Order Denying the Debtor's motion was entered on December 18, 1990.