**In re GRAND TRAVERSE DEVELOPMENT COMPANY LIMITED PARTNERSHIP, Debtor.**

**Federal Tax Identification No. 38–6291772**

**In re GRAND TRAVERSE DEVELOPMENT COMPANY, INC., Debtor.**

**In re GRAND TRAVERSE CONDOMINIUM DEVELOPERS, INC., Debtor.**

No. 1:92–CV–893.
Bankruptcy Nos. ST 92–83818 to ST 92–83820.

United States District Court, W.D. Michigan, S.D.

Feb. 16, 1993.

Daniel J. Weiner, Schafer & Weiner, P.C., Birmingham, MI, for appellants.

Michael S. Khoury, Clark, Klein & Beaumont, Detroit, MI, for appellees.

### OPINION AND ORDER

QUIST, District Judge.

Appellants, Grand Traverse Development Company Limited Partnership, Grand Traverse Development Company, Inc., and Grand Traverse Condominium Developers, Inc. ("Debtors"), are owners of the Grand Traverse Resort Hotel, a well-known destination resort complex ("Resort") located in Grand Traverse County, Michigan. While there are other properties included as part of the same development, the term "Resort", as used in this Opinion, refers to the hotel and golf facilities which are distinct from the other properties which comprise the entire complex. The Resort is also called "Parcel 1." The Resort has an appraised value of $19,600,000, although there are portions of this Parcel 1—for example, the General Manager's Unit—which are not encumbered by the first mortgage described in the next paragraph.

The Resort is, like some other parcels of the total development, encumbered by the first mortgage lien of Board of Trustees of General Retirement System of the City of Detroit and GRS Hotel Corp. ("GRS"). GRS, as its name implies, invests funds for its beneficiaries. The loan to Grand Traverse Resort was one of its investments. As security for its loans, which GRS claims total $82 million, GRS obtained first mortgage liens on various parcels of the overall development, including the Resort.

I will not go through the docket history of the two different proceedings before the bankruptcy court because I think that this history is adequately dealt with in the

Opinion of the Bankruptcy Court. Suffice it to say at this time: On July 7, 1992, GRS was automatically stayed from foreclosing on the Resort by virtue of the Debtors' filing a Chapter 11[1]; GRS immediately petitioned for relief from the automatic stay; the Debtor has presented a Fifth Amended Plan and may well present a Sixth Amended Plan; on February 8, 1993, the Bankruptcy Court lifted the automatic stay of July 7, 1992, in its Opinion Regarding Lift of the Automatic Stay, Denial of Confirmation, and Remand of Adversary Proceeding ("Opinion Lifting Automatic Stay") 150 B.R. 176; and on February 9, 1993, the bankruptcy court refused to stay its lifting of automatic stay pending the appeal of the bankruptcy court's Order Lifting Automatic Stay in its Opinion and Order Denying Motion for Stay Pending Appeal ("Opinion Denying Debtors' Motion"). Because the stay of foreclosure has been lifted, GRS intends to proceed with the foreclosure on the Resort at Noon, Tuesday, February 16, 1993, unless it is stayed by this Court.

Therefore, this matter comes before this District Court on an appeal from the bankruptcy court's Order of February 9, 1993, in which the bankruptcy court refused to stay its order lifting the automatic stay which prevented the mortgage holder, GRS, from foreclosing on its first mortgage on the Resort. This Court has reviewed all of the briefs and other documents submitted by the Debtor and GRS, has reviewed the file of the Bankruptcy Court, and has heard extensive oral arguments.[2]

Because this matter is of extreme importance to the Debtor, GRS, the unsecured creditors and the citizens of the Grand Traverse County area, the Court is dealing with this matter on an extremely expedited basis. However, this Court has not felt rushed in rendering its Opinion. With the Presidents' Day holiday, an extended weekend was available to work on this matter.

## PROCEDURE

Bankruptcy Rule 7062 provides that, while Fed.R.Civ.P. 62 generally applies to adversary proceedings, the 10-day automatic stay provided by Rule 62 does not apply to orders granting relief from an automatic stay. Bankruptcy Rule 8005 provides that a motion for a stay of a judgment pending appeal must "ordinarily" be presented to the bankruptcy judge in the first instance. A motion may then be made to the district court, but it must show why the relief, modification or termination was not obtained from the bankruptcy court. Debtors have fulfilled this requirement.[3] Rule 8005 also provides that the district court may condition the relief it grants on the filing of a bond or other appropriate security with the bankruptcy court.

## STANDARD OF REVIEW

■ On an appeal from a bankruptcy court, the district court assesses the findings of fact by the bankruptcy court on the "clearly erroneous" standard but subjects the bankruptcy court's conclusions of law to *de novo* review. *In re Charfoos*, 979 F.2d 390, 392 (6th Cir.1992). This standard applies to appeals from Rule 8005 determinations as well as other appeals from the bankruptcy court. As stated *In re Stratford Hotel Co.*, 120 B.R. 515, 516 (Bankr. E.D.Mo.1990):

A stay pursuant to this rule is discretionary with this Court. Furthermore, where the trial court has already considered and ruled on the request for a stay pending appeal, the "appellate" court's role is limited to determining whether

---

1. This stay was pursuant to 11 U.S.C. § 362(a).

2. Oral argument included the argument of the attorney for the unsecured creditors. The Court is informed that the numerous unsecured creditors—who are owed between $1 million and $2 million—support the position of the Debtor regarding the stay of the order lifting the stay. The basis for this support seems to be that the

unsecured creditors would rather deal with a known entity than an unknown entity.

3. Debtors included in their motion to this Court matters that they did not raise in their original motion. Because of the expedited nature of the hearing before the bankruptcy court on Debtors' motion, this Court has considered the new matters as properly before this Court.

the trial court abused its discretion. *In re Charles E. Rhoten,* 31 B.R. 572 (Bankr.M.D.Tenn.1983).

In *In re Van Rhee,* 80 B.R. 844, 846 (Bankr.W.D.Mich.1987), Judge Gibson said:

On review of a determination of the bankruptcy court, the district court cannot disturb or set aside findings of fact unless they are clearly erroneous. However, the district court is free to make an independent examination of any question of law or mixed questions of law and fact. The party seeking review of the bankruptcy court's determination bears the burden of proof. (Citations omitted.)

But, this Court is warned by the Sixth Circuit's Opinion *In re Woolum,* 979 F.2d 71, 75 (6th Cir.1992):

The district court committed reversible error in determining that reasonable reliance by a lender is a mixed question of law and fact, and then reviewing the bankruptcy court's decision under a *de novo* standard.

## FACTORS TO CONSIDER IN DETERMINING WHETHER TO STAY THE LIFT OF AUTOMATIC STAY PENDING APPEAL

■ The parties agree on the factors the bankruptcy court and this Court must consider when determining whether to stay the lift of the automatic stay. These factors, which are the same factors considered in determining whether to grant an injunction, are summarized in *In re Urbanco, Inc.,* 122 B.R. 513, 515 (Bankr.W.D.Mich. 1991). *See also In re DeLorean Motor Company,* 755 F.2d 1223, 1228 (6th Cir. 1985). The Court should consider whether the moving party has established:

1. A likelihood that the parties seeking the stay will prevail on the merits of the appeal;

2. The movant will suffer irreparable injury unless the stay is granted;

3. Other parties will suffer no substantial harm if the stay is granted;

4. The public interest will not be harmed if the stay is granted.

*In re Urbanco,* 122 B.R. at 515.

■ In addition to considering each of these factors, the court must consider how the factors should be balanced in light of the overall circumstances of the case. *DeLorean,* 755 F.2d at 1229. Among the circumstances to be considered is the procedural history. A motion to stay a court's order pending appeal places on the movant a higher burden to establish likelihood of success than does a motion for a preliminary injunction because the appellant must establish the likelihood that it will win reversal on its appeal. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991).[4] Moreover, although in balancing the factors "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay, ... [t]his relationship is not without its limits; the movant is always required to demonstrate more than the mere 'possibility' of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if the stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'" *Id.* at 153–54 (citations omitted).

## ANALYSIS AND APPLICATION OF FACTORS

1. *Likelihood Of Success On The Merits.*

Debtors claim that they are likely to succeed on the merits of their appeal because the bankruptcy court erred procedurally, failed to give Debtors a full hearing, made its decision on an inadequate record, and made errors of fact and law.

The bankruptcy court, in its Opinion Lifting Automatic Stay, concluded that the stay should be lifted pursuant to 11 U.S.C. § 362 for two reasons. First, pursuant to

---

**4.** In the *Michigan Coalition* case cited above, the court granted a stay of the district court's order. In subsequent history, the lower court was reversed on appeal. *Michigan Coalition v. Griepentrog,* 954 F.2d 1174 (6th Cir.1992).

Section 362(d)(2), Debtors had no equity in the property and could not meet their burden of showing that they would be able to confirm a plan of reorganization within a reasonable time. Second, pursuant to Section 362(d)(1), lift of the automatic stay was appropriate for cause on the grounds of Debtors' bad faith in using the bankruptcy proceedings to delay resolution of their dispute with GRS.[5]

(a) Likelihood of Success Under Section 362(d)(2): Lack of Equity/Inability to Reorganize. .

Debtors do not dispute the bankruptcy court's finding that they have no equity in the property, but they do dispute the determination that they will not be able to confirm a plan of reorganization within a reasonable time and claim that the bankruptcy court made several errors in reaching its determination. Debtors do not take issue, however, with the legal standard applied in assessing whether confirmation was "in prospect," which the bankruptcy court determined required Debtors to establish that reorganization was "practically guaranteed." Opinion Lifting Automatic Stay, 150 B.R. at 183.

■ Debtors claim that one of the errors of the bankruptcy court was in determining the interest ,rate of 15%. Debtors object that the bankruptcy court erred in arriving at a rate of interest by looking at rates for similar loans and then increasing the rate to reflect additional risk rather than beginning with the prime or treasury rate and adjusting upward. The Debtors have not established that the alternative analysis they propose would have resulted in the bankruptcy court approving a lower interest rate, and that assumption seems unjustified in light of the bankruptcy court's analysis that the risk of this loan was very high. Debtors have also failed to establish that it was an error of law to use evidence of the loans most similar to the proposed loan when the court determined that no one would voluntarily make a loan like the one Debtors proposed.[6] In applying these criteria, the bankruptcy court considered the . testimony presented by Debtors as well as GRS' witnesses and its conclusion that the appropriate market, interest rate is 15% in this case does not appear clearly erroneous. See Bench Opinion Re Market Interest Rate, December 22, 1992.

■ Debtors also claim that the bankruptcy court erred as a matter of law in failing to determine the extent of GRS' secured position by not permitting proofs regarding deductions of certain pieces of collateral from the value of the Resort. Debtors do not challenge the overall appraisal of the Resort of $19,600,000. The Debtors, however, claim that GRS lacks

**5.** 11 U.S.C. § 362(d) states:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack ˙of ȧdequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

**6.** The bankruptcy court issued a "Bench Opinion Re Market Interest Rate" orally on December 22, 1992. That Opinion shows that GRS proposed a rate of 15–17% and Debtor proposed a rate of 9–11½%. The bankruptcy court found that GRS' witness "was the most credible." Opinion re Market Interest Rate, slip op. at 2. Jack Reinhart, an expert witness for the Debtor, testified as to interest rates assuming the Fifth Amended Plan. His testimony was characterized as "science fiction." Id. at 8.

Although an interest rate of 15% sounds high, the bankruptcy court noted, properly I think, that, under the Fifth Amended Plan, after an initial down payment on principal, GRS would not receive its second payment until "over a year and a half later." Id. And, "only the failure to make a payment not due for eighteen months after confirmation would trigger a default. Thus, under this plan the debtors could be seriously out of formula only a few months after confirmation, but GRS would have to either stand by and wait, or make a common law demand for adequate assurances that the debtor would remain able to perform its obligations. Id. Under these very risky circumstances, I do not believe that the 15% was "clearly erroneous."

interest or the Debtor lacks ownership of many elements of the Resort. From the appraised value of $19,600,000 the Debtors would bring GRS's collateralized value down to $13,629,275.94. The amount of the collateralized value is significant because of the requirement in 11 U.S.C. § 1129(b)(2)(A)(i)(II) that GRS receive payments "of a value, as of the effective date of the plan, *of at least the value of such holder's interest in the estate's interest*" in the Resort. Under the Fifth Amended Plan, as analyzed by the bankruptcy court, Debtors will not repay GRS the value of its interest in the estate's interest.

The bankruptcy court refused to permit proofs of deductions from the appraisal value because they had not been timely offered and Debtors had failed to make timely objections on the record. Nevertheless, in making its determination that Debtors failed to meet the requirements of Section 362(d)(2), the bankruptcy court accepted all of the Debtors assumptions *arguendo* as to the *items* [7] that Debtors' argued should be excluded from the collateral except that the bankruptcy court refused to consider Debtors' arguments regarding the Water Company.

Moreover, the bankruptcy court did not simply refuse to consider the Water Company and water rights evidence. It accepted briefs on the issue and determined that the value the Debtors placed on water rights was exaggerated and based on faulty analysis of the rights of the parties. *See* Opinion Lifting Automatic Stay, 150 B.R. at 186–187. In reviewing the bankruptcy court's determination that Debtors did not have a likelihood of success on their appeal of this issue and reviewing its original decision to exclude this evidence as a matter of the law of the case, it appears that the bankruptcy court reasonably concluded the evidence was untimely and of marginal relevance. Thus, the bankruptcy court neither made an error of law nor abused its discretion in excluding the proposed evidence on the value of the water rights.

■ None of the objections Debtors raise to the bankruptcy court's determination that reorganization was not sufficiently "in prospect" persuade this Court that the bankruptcy court abused its discretion in finding that Debtors were not likely to succeed on the merits under Section 362(d)(2). At most, Debtors' arguments suggest that they may have been able to alter the assumed totals somewhat, making confirmation somewhat more likely. The fact that Debtors were on the verge of abandoning their Fifth Amended Plan and were contemplating a sixth plan provides additional evidence that timely confirmation was not "in prospect." [8]

(b) Likelihood of Success Under Section 362(d)(1): Bad Faith.

■ Even if the issues discussed in subsection 1(a) above and the other objections Debtors raise to the Section 362(d)(2) determination established "serious questions going to the merits," the bankruptcy court's conclusion that the automatic stay should be lifted for cause on grounds of bad faith presents an independent basis for its decision and there is little chance Debtors could prevail on the merits on this issue in their appeal. "Bad faith" is a grounds for lifting the automatic stay pursuant to 11 U.S.C. § 362(d)(1), which provides that the Section 362(a) automatic stay can be lifted for cause. *See In Re Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

■ Provided the correct standard of evaluation is used, a bankruptcy court's determination of bad faith is a finding of

---

7. The Debtors argue that the *value* of the items which were deducted from the $19.6 million were mere "guesstimates." The Debtors want to submit *proofs* as to actual values. Debtors' problem with their "guesstimate" argument is that Debtors themselves made the guesstimates. This Court finds that it was reasonable for the bankruptcy court to take Debtors' own opinion as to values—which certainly would not have been detrimental to Debtors—in reaching its decision.

8. Under questioning by this Court during oral argument on February 11, 1993, the Debtor's attorney conceded that a Sixth Amended Plan had been prepared and may be filed.

fact reviewed under the clearly erroneous standard. *In re Barrett*, 964 F.2d 588, 591 (6th Cir.1992). Bad faith is to be evaluated by considering the totality of the circumstances. *Id.* The Sixth Circuit has said that "good faith is an amorphous notion, largely defined by factual inquiry." *In re Charfoos*, 979 F.2d 390, 393 (6th Cir.1992). The Sixth Circuit then went on to list several factors that a bankruptcy court could consider in determining whether there was good faith. The bankruptcy court assessed the circumstances of the instant case on the basis of criteria similar to those cited in *Charfoos.*

Debtors claim that the bankruptcy court misapplied the standards for bad faith by failing to focus on the time of filing. They also complain that the bankruptcy court made a clearly erroneous factual finding in lifting the stay on the basis of bad faith because, soon after stating that Debtors were acting in good faith, the bankruptcy court changed its mind on the basis of insufficient evidence.

 It would have been inappropriate and contrary to the requirement that bad faith is to be determined by looking at the totality of circumstances for the bankruptcy court to focus, as Debtors insist, on the instant that the latest bankruptcy filing occurred—or even upon a specific later event. The bankruptcy court appropriately considered the actions of Debtors in the course of the bankruptcy proceeding as well as their initial status. At the time of filing, the bankruptcy court gave Debtors the benefit of the doubt and did not find bad faith. Several factors would have supported a finding of bad faith at that time and remain present, including the fact that Debtors have a single asset, there are few unsecured creditors whose claims are overshadowed by GRS' claim, the property is subject to foreclosure, the dispute between Debtors and GRS can be resolved in the pending state action, and the timing of Debtors' filing evidenced an intent to delay resolution of its dispute with GRS by delaying foreclosure. The factors that tipped the balance against Debtors during the course of the bankruptcy proceeding were

actions of Debtors that provided additional evidence that they were using the bankruptcy proceedings as a means to delay resolution of their dispute with GRS and delay foreclosure. These actions included Debtors' requests for delays, their plan revisions, their offers of proof, and their general lack of responsiveness, evidenced by a practice of making oral modifications, altering the basis of their arguments, making revisions so close to a the hearing times that others did not have time to respond, and withholding their sixth amended plan from filing. The actions on which the bankruptcy court based its finding that Debtors could no longer be said to be acting in good faith provide an appropriate basis for its finding. "As long as the court sufficiently considered [Debtors'] prior conduct under the totality of circumstances test, the exact manner in which the bankruptcy court weighed the prior conduct is irrelevant given the bankruptcy court's discretionary power in making a determination of good faith." *In re Barrett*, 964 F.2d at 592. Debtors thus do not have a likelihood of success on the merits of their appeal of the decision lifting the stay.

### 2. *Irreparable Harm To Movant.*

 Debtors claim they will suffer irreparable harm because they do not have meaningful remedies under state law and the property subject to foreclosure is unique, making monetary damages inadequate. The bankruptcy court did not err holding that Debtors are not deprived of legal remedies. They retain their redemption rights and have claims against GRS in state court that may result in money damages.

 Debtors' claim that it will suffer irreparable harm by losing the Resort to foreclosure has some merit, in light of the unique nature of the property at issue. *See In re Gleasman*, 111 B.R. 595, 601 (Bankr.W.D.Tex.1990). The potential for irreparable harm to Debtors must be weighed, however, against the likelihood of success on the merits and the potential of harm to others and to the public interest.

### 3. *Substantial Harm To Others And To The Public Interest.*

The greatest harm that could come to others from the proceedings at issue is closure of the Resort. Closure or a deterioration in maintenance and service would have both short and long term effects on the value of the collateral and the well-being of those who do business with the Resort and the Grand Traverse community that benefits from the Resort.

Debtors claim that the public interest will be harmed if the bankruptcy court order is not stayed because GRS will mismanage or close the Resort. The bankruptcy court has determined that lifting the stay is the better course of action to prevent closure of the Resort. The court concluded that the Resort was in more danger of closing due to the infirmity of the Debtors than if it were in the hands of GRS, which has repeatedly stated its intention to continue operating the Resort. It found, on the basis of evidence and offers of proof, that Debtors were likely to run out of money this Spring and thereby imperil continued operations.

Debtors' Supplemental Brief to this Court confirms that they will run out of cash shortly. Debtors claim they will need approximately $1,222,400 to make it through 1993. They propose to raise the money they need by pledging assets GRS claims are at least partially encumbered. Thus, Debtors' ability to borrow more working capital will not be as easy as they assert in their Supplemental Brief of February 13, 1993. The factors of harm to other parties and the general public weigh heavily in favor of denial of Debtors' motion.

### 4. *Balancing the Factors.*

 When the factors discussed above are balanced in light of the overall circumstances of the case, as the *DeLorean* and *Michigan Coalition* decisions direct, *see supra* at 796, it is clear that Debtors' motion to stay the bankruptcy court's order lifting the automatic stay was correctly denied by the bankruptcy court. Debtors have not met the basic requirement of demonstrating "more than a mere 'possibility' of success on the merits." *Michigan Coalition*, 945 F.2d at 153. In addition, they have not demonstrated that the potential irreparable harm to movants outweighs the potential irreparable harm to GRS and others if the motion is granted.[9]

### CONCLUSION

For the reasons stated, the bankruptcy court's Order Denying Motion for Stay Pending Appeal is hereby **AFFIRMED**. This Court does not stay the Order Regarding Lift of the Automatic Stay dated February 8, 1993.

**IT IS SO ORDERED.**

---

**9.** Throughout its Supplemental Brief and in oral argument to this Court, the Debtors argued that the complexity of this matter and the burgeoning docket of the bankruptcy court caused the bankruptcy judge to abrogate her duties and merely pass this matter along in order to be rid of it. E.g., Debtors' Supplemental Brief of 2/11/93, p. 8. Neither this Court nor any other reviewing court should be dismayed or delayed by this argument. There is nothing to support the charge. It appears to this Court that the bankruptcy court did not improperly limit Debtors' opportunity to present evidence. On the contrary, the bankruptcy court considered the evidence and offers of proof appropriately and dealt with Debtors' arguments thoroughly and properly.