In re KAR DEVELOPMENT ASSOCIATES, L.P.,
Debtor.

Bankruptcy No. 93–22056–11.

United States Bankruptcy Court,
D. Kansas.

Aug. 31, 1994.

R. Pete Smith and Jonathan A. Margolies of McDowell, Rice & Smith, P.C., Kansas City, MO, for debtor KAR Development Associates, L.P.

Mark A. Shaiken and Cindi S. Woolery of Stinson, Mag & Fizzell, and Ronald S. Weiss of Berman, Deleve, Kuchan & Chapman, Kansas City, MO, for Alchemedes/Olathe Inn Ltd. Partnership and Sec. Bank of Kansas City.

Mark A. Shaiken and Cindi S. Woolery of Stinson, Mag & Fizzell, Kansas City, MO, for City of Olathe, Kan.

## ORDER ON MOTION FOR STAY PENDING APPEAL

JOHN T. FLANNAGAN, Bankruptcy Judge.

The movants are creditor parties to a Kansas industrial revenue bond transaction financing the construction of a Holiday Inn Hotel operated by debtor in Olathe, Kansas.[1] This Court entered an order on August 5, 1994, denying the creditors' joint motion for relief from automatic stay aimed at gaining possession of the hotel.[2] Movants grounded their motion on the debtor's failure to assume an industrial revenue bond lease within 60 days of the filing of the Chapter 11 petition. Under 11 U.S.C. § 365(d)(4), the failure to assume a lease in time is a deemed rejection requiring the debtor to immediately surrender nonresidential real property to the lessor. A corollary to the creditors' position was that the hotel and its revenues were not property of the debtor's Chapter 11 bankruptcy estate. Also apparent was the reality that even if the debtor had assumed the alleged lease in time, the reorganization was doomed if § 365 controlled. Given the magnitude of the creditors' claims, the debtor could not possibly cure lease defaults as § 365 requires upon assumption of a lease.

The Court's decision of August 5, 1994, rejected movants' contention that the industrial revenue bond transaction was a true lease and found instead that the parties' intent was to create a security agreement which for reorganization purposes should be treated as a secured claim. Consistent with that ruling, the Court also held that Alchemedes' secured claim encompassed the hotel revenues which were cash collateral under § 363(a). This holding left for later determination whether the debtor could use cash collateral in its reorganization effort.

The creditors filed a Notice of Appeal to the district court on August 15, 1994,[3] and on August 19, 1994, they filed a Motion for Stay Pending Appeal, or in the Alternative for Continuance of Cash Collateral Hearing under Fed.R.Bankr.P. 8005. The stay motion asks that all proceedings for use of cash collateral be stayed during the appeal. On August 25, 1994, the debtor filed a Notice of Cross–Appeal of the Court's ruling that the

---

1. Debtor KAR Development Associates, L.P., appears by its attorneys, R. Pete Smith and Jonathan A. Margolies of the firm of McDowell, Rice & Smith, P.C., Kansas City, Missouri. Alchemedes/Olathe Inn Limited Partnership, the City of Olathe, and Security Bank of Kansas City (collectively "the movants") appear by their attorneys, Mark A. Shaiken and Cindi S. Woolery of the firm of Stinson, Mag & Fizzell, Kansas City, Missouri. Alchemedes/Olathe Inn Limited Partnership and Security Bank of Kansas City also appear by their attorney, Ronald S. Weiss of the firm of Berman, DeLeve, Kuchan & Chapman, Kansas City, Missouri, new counsel in the case since the Memorandum Opinion filed August 5, 1994.

2. The Memorandum Opinion of August 5, 1994, identifies Alchemedes/Olathe Inn Limited Partnership as the main player. It is the successor bondholder and it has enlisted the City of Olathe and Security Bank as additional parties for the litigation by agreeing to indemnify them. The interests of the City and Security are well protected by the value of the hotel.

3. Although they are probably not applicable here, some case authority holds that orders denying relief from stay are not final. *Bowers v. Connecticut National Bank*, 847 F.2d 1019 (2nd Cir. 1988); *Promenade National Bank v. Phillips (In the Matter of Phillips)*, 844 F.2d 230 (5th Cir. 1988); *Quinn v. CGR*, 828 F.2d 1463, 1465–67 (10th Cir.1987); *contra In re Apex Oil Co.*, 884 F.2d 343 (8th Cir.1989).

hotel revenues are cash collateral and a Response in Opposition to the Motion for Stay Pending Appeal. The Court heard arguments on August 29, 1994, and took the matter under advisement. Debtor and the movants filed supplemental post-argument memoranda on August 30, 1994.

To the Court's knowledge, there are several outstanding questions for decision on the horizon, all involving the use of cash collateral. The Court has scheduled a hearing for September 14, 1994, on the use of cash collateral for the payment of attorneys' fees and hotel operations. In addition, counsel advises that debtor plans to make capital improvements to avoid loss of its Holiday Inn franchise and wishes to pay for the improvements with cash collateral. As stated, the movants oppose the convening of any hearings to determine if cash collateral can be used while their appeal is in process. Both sides have indicated that the question will likely go to the circuit level of appeal. Debtor's counsel estimated a two-year appeal time in his oral remarks at the August 29 hearing and argued that any delay in going forward with the reorganization process will seriously impair his client's chances for a successful rehabilitation.

This matter is presented here because of the first sentence of Fed.R.Bankr.P. 8005 which requires that ordinarily a motion for stay pending appeal should be addressed to the bankruptcy judge in the first instance. The rule also authorizes the bankruptcy judge to order the continuation of proceedings in the case and to make other appropriate orders during the pendency of an appeal to protect the rights of parties in interest.

The text of Fed.R.Bankr.P. 8005 provides:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate

order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

■ The test for determining whether to grant a stay pending appeal is similar to that used for injunctions. Movants are required to show that (1) they are likely to prevail on the merits of their appeal; (2) without a stay, they will suffer irreparable injury; (3) other interested persons will suffer no substantial harm, and (4) the public interest will not be harmed. All four of the requirements must be satisfied to justify entry of a stay order. 6 *Collier Bankruptcy Practice Guide* ¶ 117.11[2] at 117–39 (1994). *In re Westwood Plaza Apartments, Ltd.*, 150 B.R. 163, 168 (Bankr.E.D.Tex.1993); *In re Grand Traverse Development Co. Ltd. Partnership*, 151 B.R. 792, 796 (W.D.Mich.1993).

■ In connection with the first prong of the test—the "likely to prevail on the merits" determination—it is necessary to dispel any thought that because this Court's August 5, 1994, decision is contrary to another Kansas bankruptcy case, that fact alone makes the appeal likely to succeed on the merits. *See In re Petroleum Products, Inc.*, 72 B.R. 739 (Bankr.D.Kan.1987), *affirmed*, No. 87–4127–R, slip op., 1988 WL 492079 (D.Kan. Nov. 21, 1988). While this prior bankruptcy case was affirmed on appeal to the district court, it is clear that this Court is not bound by the district court decision. A decision of a single district judge in a multi-judge district is not the law of the district and this Court was not bound to follow the prior cases. *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3rd Cir.1991) (a bankruptcy judge is not bound to follow a decision of a single district judge of his district); *In re Gaylor*, 123 B.R. 236 (Bankr.E.D.Mich.1991); *In re Rheuben*, 128 B.R. 551 (Bankr.C.D.Calif.1991); *In re Hubbard*, 23 B.R. 671, 673 (Bankr.S.D.Ohio 1982); *In re Argo Communications Corp.*, 134 B.R. 776 (Bankr.S.D.N.Y.1991); *In re Davis*, 134 B.R. 34 (Bankr.W.D.Okla.1991); *In re Shattuc Cable Corp.*, 138 B.R. 557 (Bankr.N.D.Ill.1992); *In re Shubert*, 147 B.R. 618 (Bankr.N.D.Ga.1992); *In re Abernathy*, 150 B.R. 688 (Bankr.N.D.Ill.1993); *In re Johnson*, 140 B.R. 850

(E.D.Penn.1992); *Fox v. Acadia State Bank,* 937 F.2d 1566 (11th Cir.1991).

To decide whether the appeal meets the first prong of the test, this Court must second guess its own decision—an especially difficult task to perform with objectivity. Obviously, this Court felt that its reasoning was supported by the evidence and the existing law, or it would not have written and rewritten a 65–page opinion, destroying several forests along the way.

██ One aspect of the appeal of the decision is subject to a reasonable prediction, however. While the outcome of the appeal is difficult to assess, it is probable that if the decision is reversed, it will be on the basis of the law, not the factual findings. This is so because of the standard for review of fact questions—clearly erroneous rule—and because there is no serious contention that the lease transaction qualifies as a true lease factually. Indeed, in the *Petroleum Products* case, Judge Pusateri conceded that factually the transaction before him was undoubtedly a financing arrangement, not a true lease.

The opinion being appealed gives considerable attention to the legal question of whether state or federal law should apply to the dispute. This Court believes from its reading of the relevant case law and the following commentaries, all of which touch on the question to some degree, that there is sufficient support for the opinion to withstand an appeal. If this is so, the movants are not likely to prevail on the merits of their appeal. John T. Cross, *State Choice of Law Rules in Bankruptcy,* 42 Okla.L.Rev. 531 (1989); Peter Westen & Jeffrey S. Lehman, *Is There Life For Erie After The Death of Diversity?,* 78 Mich.L.Rev. 311 (1980); Alfred Hill, *The Erie Doctrine in Bankruptcy,* 66 Harv. L.Rev. 1013 (1953); Henry J. Friendly, *In Praise of Erie—and of the New Federal Common Law,* 39 N.Y.U.L.Rev. 383 (1964); John Hart Ely, *The Irrepressible Myth of Erie,* 87 Harv.L.Rev. 693 (1974); George D. Brown, *Of Activism and Erie—The Implication Doctrine's Implication For The Nature and Role of The Federal Courts,* 69 Iowa L.Rev. 617 (1984); John T. Cross, *Viewing Federal Jurisdiction Through the Looking Glass of Bankruptcy,* 23 Seton Hall L.Rev.

530 (1993); John T. Cross, *Congressional Power to Extend Federal Jurisdiction to Disputes Outside Article III: A Critical Analysis from the Perspective of Bankruptcy,* 87 Nw.U.L.Rev. 1188 (1993); Susan Block–Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis,* 62 Fordham L. Review 721 (Feb.1994).

The second prong of the test is whether the movants will suffer irreparable injury if cash collateral proceedings are allowed to go forward. As mentioned, there are several forthcoming questions that turn on the debtor's use of cash collateral, i.e., whether debtor's attorneys' fees, if allowed, should be paid from cash collateral on an interim basis; whether the debtor should be allowed to make capital expenditures from cash collateral funds on hand in order to ward off the stay relief motion of its franchisor, Holiday Inn; and whether the debtor can use cash collateral to fund other aspects of its reorganization effort. All of these questions are critical to the debtor's reorganization effort. They require the Court to conduct a hearing and make a decision within the guidelines of the Bankruptcy Code concerning what, if any, relief will be granted. Obviously, until the Court rules on these cash collateral questions, the movants will suffer no harm.

The third prong of the test is whether interested parties other than movants will suffer substantial harm if a stay is imposed. No doubt delay will be harmful to the debtor and its other creditors. In the debtor's case, such delay will probably result in substantial harm to the debtor since administrative expenses will accumulate and its prospects of reorganization will weaken. As pointed out in the August 5 Memorandum Opinion, other creditors will suffer substantial harm if the reorganization fails since they will be left to their state law rights as unsecured creditors without leverage to force payment on their claims.

The final prong of the test requires a showing that the public interest will not be harmed if there is a stay. On this point, debtor's Response to the motion for stay pending appeal quotes *In re Gathering Restaurant, Inc.,* 79 B.R. 992, 999 (Bankr.

N.D.Ind.1986): "In the context of a bankruptcy case ... the public interest ... means the promoting of a successful reorganization which should be one of the paramount concerns of a bankruptcy court." *See also In re Porter,* 54 B.R. 81, 82 (Bankr.N.D.Okla.1985) ("The public interest, though difficult to measure in a case involving primarily private rights, is generally served by moving forward.").

The Court finds that the moving creditors have failed to satisfied all of the tests for imposing a stay pending appeal. Therefore, the Motion for Stay Pending Appeal is denied. Unfortunately for the debtor and its general creditors, the ruling does not end this satellite dispute.

■ Movants argued at the hearing and in their supplemental memorandum that because the debtor filed a Notice of Cross–Appeal on the cash collateral question, it has removed this Court's jurisdiction over that issue. This position is supported by the cases. *In re Kleinman,* 150 B.R. 524, 526 (Bankr.S.D.N.Y.1992) ("The filing of a notice of appeal to a district court divests a bankruptcy court of jurisdiction to proceed with matters raised by such appeal. This divestment of jurisdiction preserves the integrity of the appellate process by avoiding the needless confusion which would flow from putting the same issue before two courts at once." (Citation omitted.)); *In re Davis,* 160 B.R. 577, 581 (Bankr.E.D.Tenn.1993); *In re Neuman,* 67 B.R. 99, 101 (S.D.N.Y.1986); *Garcia v. Burlington Northern R. Co.,* 818 F.2d 713, 721 (10th Cir.1987).

Debtor's cross-appeal indicates that debtor does not agree with the Court's ruling that the hotel revenues are the movants' collateral, at least not post-petition collateral having the status of cash collateral. But the lease structure of the IRB transaction garnered all of the hotel revenue and indeed the hotel itself (as well as Anchor's pledged securities) as collateral for the bond obligation. The earnings of the hotel were to be used to pay off the bond debt. When this Court decided that in reality the lease was a security agreement, it could not in conscience vitiate the consequences of the security arrangement. Either the transaction was a true lease, or it was a security agreement that covered all of the hotel revenues that were treated as rents when the IRB transaction was viewed as a true lease. This holding that the transaction was a security agreement collateralized by the hotel and its profits puts the debtor in the same position in bankruptcy as most single asset real estate debtors who have signed enforceable mortgages containing assignment-of-rents clauses. Debtor's suggestion that the hotel revenues are not movants' collateral and thus not cash collateral is too long a stretch for this Court, perhaps any court, to countenance.

In its Supplemental Response filed August 30, 1994, debtor cited *In Matter of Sullivan Cent. Plaza I, Ltd.,* 935 F.2d 723, 727 (5th Cir.1991), and *In re Bencker,* 122 B.R. 506 (Bankr.W.D.Mich.1990). The cases were offered as authority for relaxing the normal rule—that the appeal of an issue divests the lower court of jurisdiction—in the context of a reorganization case. Unfortunately for the debtor, its general creditors, and its interest holders, the cited cases do not support the debtor's argument on the facts of this case, except by dicta.

This is also unfortunate because in all likelihood the success of the debtor's reorganization effort is dependent on moving forward on the outstanding questions of attorneys' fees, franchisor's rights, capital improvements, and the right of the debtor to use cash collateral for other reorganization purposes. Perhaps the debtor could justify the use of Alchemedes' cash collateral. If so, presumably the creditor would be adequately protected as a condition of such use, or the decision would be sanctioned by some other bankruptcy principle. But any such determination will have to wait because the cross-appeal has taken the cash collateral question from this Court's jurisdiction.

Therefore, the cash collateral hearing scheduled for September 14, 1994, is cancelled and it is ordered that this Court will not entertain any cash collateral issues pending the cross-appeal. If the cross-appeal is dismissed, the Court will reschedule the hearing, provided the district court does not

entered a stay order prohibiting such hearing.

IT IS SO ORDERED.