**In re FEDERATED FOOD COURTS, INC., Debtor.**

**MAGNOLIA BLUFF FACTORY SHOPS LIMITED PARTNERSHIP, Movant,**

v.

**FEDERATED FOOD COURTS, INC., Respondent.**

**Bankruptcy No. A97–81239–JB.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

March 27, 1998.

See also 222 B.R. 396.

G. Frank Nason, IV, Lamberth, Bonapfel, Cifelli, et al, Atlanta, GA, for Debtor.

Brad A. Baldwin, Jones, Day, Reavis & Pogue, Atlanta, GA, for Movant.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

This Chapter 11 case involves questions regarding the applicability of the doctrines of waiver and excusable neglect to the 60–day deadline in 11 U.S.C. § 365(d)(4) for assuming a non-residential lease. Procedurally, this case is before the Court on several motions relating to a lease between debtor Federated Food Courts, Inc. ("Federated") and Magnolia Bluff Factory Shops Limited Partnership ("Magnolia"). The debtor leases certain real property from Magnolia to operate a food court in a shopping mall in Darien, Georgia. Magnolia filed a motion to dismiss the case or to have the automatic stay lifted, alleging non-payment of post-petition rent and seeking relief to proceed with eviction proceedings against the debtor. Debtor filed a motion to extend the time to assume or reject the lease one day after the 60–day deadline set forth in 11 U.S.C. § 365(d)(4). Magnolia objected, arguing that this late fil-ing resulted in an automatic rejection of the lease, that debtor's motion to extend must be denied, and that debtor's case should be dismissed or Magnolia should be granted relief from the automatic stay to repossess the premises. Debtor argues that Magnolia has waived any rights to assert automatic rejection under § 365(d)(4) and that the late filing of debtor's motion to extend the time to assume the lease was the result of excusable neglect, such that the debtor should still have an opportunity to assume the lease. After reviewing the record and the briefs submitted, the Court concludes that the facts do not support a finding of waiver. However, the Court invites counsel to give more thoughtful consideration as to whether the Court has the authority to enlarge the time deadline in § 365(d)(4), if the Court finds that the late filing was the result of excusable neglect.

### I. Facts

The parties stipulated to a number of facts. On January 13, 1995, Universal Hospitality Corporation ("Universal"), as tenant, entered into a lease for the operation of a food court at Magnolia Bluff Factory Shops in Darien, Georgia with Prime Retail, L.P. ("Prime Retail"), as landlord (the "Lease"). Pursuant to an "Assignment of Lease Agreement" dated December 1, 1995, the debtor Federated is the successor in interest and assignee of all of Universal's rights and obligations as tenant under the Lease. Magnolia is the successor in interest to Prime Retail as landlord under the Lease.

Debtor filed this Chapter 11 case on November 28, 1997. On December 11, 1997, Magnolia sent a letter to the debtor's parent corporation, demanding payment of the post-petition rent in the amount of $20,514.06 that Magnolia claimed was due under the Lease for December of 1997. On December 17, 1997, debtor's counsel sent a reply letter to Magnolia disputing the amount of rent Magnolia claimed was owed under the Lease, and setting forth the debtor's contention that the Lease had been verbally modified to change the amount of rent owed under the Lease. Debtor contended that under the alleged modifications, Magnolia was entitled to 10% of the December sales, net of sales tax, and

the letter advised that debtor would pay December rent during the first week of January. On December 24, 1997, Magnolia's in-house counsel delivered a letter to debtor's counsel which (i) denied debtor's contention that the Lease had been modified to change the amount of rent owed under the Lease, and (ii) demanded full payment of all post-petition rent which Magnolia again claimed was in the amount of $20,514.06.

On or about January 6, 1998, debtor mailed a check for $7,960.61 to Magnolia as the amount of December rent debtor claimed was owed under the Lease, as allegedly modified. The check was deposited by Magnolia and cleared the debtor's bank account. On January 9, 1998, Magnolia sent a letter to counsel for the debtor, demanding payment of January rent, which Magnolia claimed was owing in the amount of $19,231.93.

On January 15, 1998, the first meeting of creditors was held pursuant to 11 U.S.C. § 341, at which time the debtor informed Magnolia's counsel that the debtor intended to litigate the issue of the enforceability of the alleged modification to the Lease, and to assume the Lease if the modification were upheld. Debtor and its counsel further stated at that meeting that if the alleged modification were not upheld, debtor's reorganization efforts would fail.

On January 21, 1998, Magnolia filed a "Motion to Dismiss or in the Alternative Motion for Relief from the Automatic Stay." The motion alleged, among other things, that debtor had failed to pay all of the post-petition rent which Magnolia claimed was owed under the Lease. This motion was set for a hearing on February 11, 1998, by Order and Notice entered January 23, 1998.[1] On January 28, 1998, debtor filed a "Motion to Extend Time Within Which to Assume or Reject Unexpired Lease of Non–Residential Real Property" (the "Motion to Extend"), along with a proposed Order and Notice setting a hearing date of February 11, 1998 on the Motion to Extend and providing that the time to assume or reject would be extended through the hearing date. The proposed Order and Notice was entered on February 3, 1998. On January 28, 1998, debtor also filed a complaint against Magnolia (Adversary Proceeding No. 98–6060), seeking, among other things, a declaratory judgment as to whether the Lease had been modified.

On or about February 4, 1998, debtor mailed a check for $4,674.90 to Magnolia as the amount of January rent debtor claimed was owed under the Lease, as allegedly modified. To date, debtor's check for $4,674.90 has not been deposited by Magnolia, and the check has not cleared debtor's bank account.

On February 9, 1998, at approximately 5:00 p.m., Magnolia's counsel contacted debtor's counsel and informed him that Magnolia believed debtor's Motion to Extend was untimely filed, as it was filed 61 days rather than 60 days after the case was commenced. It is undisputed that both debtor's Motion to Extend and debtor's complaint for declaratory judgment were filed on January 28, 1998, which is 61 days after the Chapter 11 case was filed. Debtor's counsel contends, and Magnolia has not disputed, that the filing of the motion and complaint 61 days after the case was commenced, as opposed to 60 days, occurred as a result of an honest mistake in calculating the number of days which had elapsed since the case was filed. It is undisputed that the late filing was not the result of any improper conduct or fraud. Upon learning of the mistake, debtor's counsel promptly wrote the Court a letter on February 10, 1998, with a copy to Magnolia's counsel, explaining the miscalculation. Debtor's counsel explained that he knew he filed the bankruptcy case the day after Thanksgiving, but he believed the day after Thanksgiving was November 29, instead of November 28. Thus, his calculation was one day off.

On February 10, 1998, Magnolia filed a supplemental brief, arguing that the Lease had been automatically rejected pursuant to 11 U.S.C. § 365(d)(4). On the same date, debtor filed a motion to assume the Lease, as allegedly modified. On February 11, 1998, the Court held the scheduled status confer-

---

1. The initial status conference was also set for February 11, 1998, by Order entered January 13, 1998.

ence and hearings. After hearing argument from counsel, the Court instructed the parties to submit stipulated facts and gave counsel time to file briefs as to whether the doctrines of waiver or excusable neglect applied.

On February 11, 1998, Magnolia sent a letter to debtor's counsel signed by Allen Underwood as general manager, demanding the rent payment for February, which Magnolia claimed was owing in the amount of $19,231.93. Two days later, on February 13, 1998, Magnolia's bankruptcy counsel Brad Baldwin delivered a letter to debtor's counsel, stating, *inter alia*, that Magnolia had not deposited debtor's check for $4,674.90; that Magnolia disputed any contention that the check constituted the correct amount of rent owed under the Lease; and that Magnolia did not waive its claim that the Lease was rejected as a matter of law on January 27, 1998.

On February 17, 1998, Magnolia's counsel Mr. Baldwin wrote debtor's counsel, advising him that the February 11, 1998, letter sent by Mr. Underwood was a form letter written without prior knowledge or notification of Magnolia's counsel, and that Magnolia did not waive any claim that the Lease with Federated was rejected as a matter of law on January 27, 1998.

The parties seem to dispute whether the debtor is properly operating the food court. Magnolia submitted an affidavit, attaching some customer complaints. Debtor submitted an affidavit by its president to the effect that it is operating successfully. Whether debtor's food service is satisfactory is not germane to the limited issues now before the Court, and the Court accordingly makes no findings on the adequacy of the product delivered by the debtor.

## II. Legal Analysis

■ Section 365(d)(4) of the Bankruptcy Code contains special time limitations for assuming or rejecting leases of non-residential real estate under which the debtor is a lessee. The statute provides, in pertinent part:

[I]f the trustee does not assume or reject an unexpired lease of nonresidential

real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

This provision was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, and was "intended to reduce the time that a lessor must wait either to reacquire property or learn that the debtor or trustee had decided to assume the benefits and burdens of the lease." 3 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 365.04[3] at 365–32 (15th ed.1997). Although § 365(d)(4) refers to the "trustee," the Bankruptcy Code provides that the debtor-in-possession "shall have all the rights ... and shall perform all the functions and duties ... of a trustee serving in a case" under Chapter 11. 11 U.S.C. § 1107(a); *see South Street Seaport Ltd. Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.),* 94 F.3d 755, 758 n. 3 (2d Cir.1996).

■ Pursuant to 11 U.S.C. § 365(d)(4), a debtor's failure to file a timely motion to assume or a motion to extend the time to assume or reject an unexpired lease of nonresidential real property results in the automatic rejection of that lease as a matter of law. *See Mutual Life Ins. Co. v. Dublin Pub, Inc. (In re Dublin Pub, Inc.),* 81 B.R. 735, 737 (Bankr.N.D.Ga.1988); *Ok Kwi Lynn Candles, Inc.,* 75 B.R. 97, 100 (Bankr. N.D.Ohio 1987). The date of the order for relief in this case was November 28, 1997. The 60–day deadline for filing a proper motion expired on January 27, 1998. Debtor did not file its motion for an extension of time to assume or reject the Lease until January 28, 1998, one day after the deadline. Thus, it would appear that the Court does not have the authority to grant an extension of time for the debtor to assume or reject the Lease.

Debtor offers two arguments in the hopes of avoiding the determination that the Lease has been automatically rejected. First, debtor argues that Magnolia has waived its right

**394**

to assert the automatic rejection provision of § 365(d)(4). Magnolia does not dispute that waiver is available as a defense here. *See Ranch House of Orange–Brevard, Inc. v. Gluckstern (In re Ranch House of Orange– Brevard, Inc.),* 773 F.2d 1166 (11th Cir.1985) (where the Eleventh Circuit recognized the continued validity of waiver as a defense to the argument that a lease has been rejected as a matter of law); *see also In re Haute Cuisine, Inc.,* 57 B.R. 200 (Bankr.M.D.Fla. 1986); *In re T.F.P. Resources, Inc.,* 56 B.R. 112 (Bankr.S.D.N.Y.1985).

■ Courts have applied a traditional waiver analysis to the 60–day deadline in § 365(d)(4). A waiver requires, "(1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit." *Haute Cuisine,* 57 B.R. at 203. The waiver "may be expressed or implied from conduct," but when waiver is implied from conduct, "such conduct must make out a clear case of waiver." *Id.*

■ The facts argued by debtor do not support a finding of waiver. First, debtor asserts that at the first meeting of creditors, debtor informed Magnolia that debtor intended to litigate the issue of the modification of the lease and to assume the lease if the modification were upheld. Debtor argues that Magnolia did not or express any opposition to this procedure and that silence at this meeting amounts to a waiver. The first meeting of creditors was held on January 15, 1998, twelve days *before* the expiration of the deadline under § 365(d)(4). The failure by Magnolia's counsel to make a responsive statement at the § 341(a) meeting cannot possibly demonstrate an intention by Magnolia to relinquish the right to assert automatic rejection under § 365(d)(4), if the debtor failed to file a timely motion to assume by January 27, 1998. In fact, only six days after the first meeting of creditors, on January 21, 1998, Magnolia filed a motion to dismiss and a motion for relief from the automatic stay, making it perfectly clear that Magnolia sought possession of the premises.

■ Second, debtor makes much of the fact that Magnolia received and cashed a check for December rent in the amount of $7,960.61. Debtor sent the check on January 6, 1998, before the § 365(d)(4) deadline for assumption. Magnolia correctly points out that § 365(d)(3) of the Bankruptcy Code contains an anti-waiver provision regarding a landlord's receipt of rental payments. This subsection requires the debtor to timely perform obligations under an unexpired lease of non-residential real property, *until* the lease is accepted or rejected. The last sentence of § 365(d)(3) provides as follows: "Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title." Thus, Magnolia's acceptance of rent before the lease was assumed or rejected, i.e., within the 60–day period, is not a waiver of Magnolia's right to claim the lease was rejected on January 28, 1998. *See In re Urbanco, Inc.,* 122 B.R. 513, 517 (Bankr. W.D.Mich.1991); *In re Dial–A–Tire, Inc.,* 78 B.R. 13, 16 (Bankr.W.D.N.Y.1987); *In re Re– Trac Corp.,* 59 B.R. 251, 256–57 (Bankr. D.Minn.1986).

■ Debtor similarly argues that waiver arises from Magnolia having received a rent payment for January, which payment debtor made in early February. However, Magnolia never cashed this check, and Magnolia's counsel's letter of February 13, 1998, made it clear that Magnolia was insisting on, among other things, asserting its rights under § 365(d)(4).

Debtor also contends that Magnolia's letter dated February 11, 1998, demanding payment under the Lease is inconsistent with the position that the Lease had been rejected and amounts to a waiver. Debtor cites *In re Dulan,* 52 B.R. 739 (Bankr.C.D.Cal.1985) to support this argument. The facts in *Dulan* were quite different. There, the landlord's counsel wrote debtor's counsel inviting a lease assumption and urging debtor's counsel to revise the Chapter 13 plan to provide for an assumption of the lease. Here, the letters written by landlord's counsel dated February 13 and February 17, 1998, do not in any way invite lease assumption and in fact make it quite clear that Magnolia maintains the

Lease was rejected by operation of law under § 365(d)(4). Moreover, Magnolia's counsel filed briefs arguing automatic rejection on February 10, 1998, and took the position that the Lease was rejected in open court on February 11, 1998. In the face of the briefs filed on February 10, 1998, the position announced in open court on February 11, 1998, and the letters written by landlord's counsel on February 13 and 17, 1998, a collection letter by Magnolia's general manager on February 11, 1998, is not clear evidence of Magnolia's intent to relinquish its rights under § 365(d)(4).

■ Finally, on March 9, 1998, debtor filed a supplemental brief in which it alleged additional facts pertaining to a buffet provided by debtor for some 40 guests of Magnolia. Debtor attached a copy of a letter dated February 25, 1998, from Ms. Daniel, associate general counsel at Prime Retail, addressed to debtor's counsel, requesting an estimate of the price of a buffet for 40 guests. Debtor also attaches a copy of a letter dated March 4, 1998 from Magnolia's marketing director, thanking and complementing debtor on the buffet. Debtor suggests that Magnolia's willingness to order food from the debtor and to have it included as "gross sales" under the Lease amounts to a waiver of Magnolia's argument that the Lease has been rejected. Magnolia's response is that Magnolia had tour guides visiting the shopping center, and that until debtor is evicted, Magnolia has no option but to request that the debtor provide food service for shopping center customers. Under the circumstances, Magnolia's use of the food court to feed customers is not a waiver.

Second, debtor argues that the equitable doctrine of "excusable neglect" should operate here to excuse the late filing of debtor's Motion to Extend. Debtor relies on Fed. R. Bankr.P. 9006(b), entitled "Enlargement," which provides, in pertinent part:

> (1) In General. Except as provided in paragraphs (2) and (3) of this subdivision, *when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion*

(1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) *on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.* (emphasis added). Debtor cites the 1993 Supreme Court decision of *Pioneer Investment Svcs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) and urges the Court to find that the untimely filing was the result of excusable neglect.

■ In *Pioneer,* the Court considered whether an attorney's inadvertent failure to file a proof of claim before expiration of the bar date could constitute "excusable neglect" within the meaning of Fed. R. Bankr.P. 9006(b)(1). The court examined the meaning of that term in analogous contexts, such as Fed.R.Civ.P. 60(b), and concluded that it encompasses situations in which a failure to comply is attributable to negligence. *Id.* at 394–95, 113 S.Ct. at 1497–98. Whether the party's neglect of a deadline may be excused is an equitable decision turning on all relevant circumstances surrounding the party's omission. *Id.* The factors to consider include (1) the danger of prejudice to the [opposing party], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was in the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.; see also Advanced Estimating System, Inc. v. Riney (In re Advanced Estimating System, Inc.),* 130 F.3d 996, 997–98 (11th Cir.1997).

The difficulty here is that Bankruptcy Rule 9006(b) is a rule governing the enlargement of time periods prescribed in other Bankruptcy Rules or court orders. Bankruptcy Rule 9006(b) refers to deadlines set by "these rules or by a notice given thereunder or by order of the court." It does not refer to enlarging time periods prescribed by statute. The 60–day deadline for filing a motion to assume a non-residential lease, however, is set by statute, not by the Bankruptcy Rules, not by a notice given under the Bankruptcy

Rules, and not by an order of the Court. Thus, it would seem that Bankruptcy Rule 9006(b)(1) does not give the bankruptcy court the discretion to allow a late motion to extend the time for assuming a lease, even if the mistake were the result of excusable neglect. However, the parties did not address this issue at any length in their briefs. The issue, simply stated, is whether a court can enlarge a statutory deadline using a federal rule of procedure allowing a late filing for excusable neglect. Case law outside the area of bankruptcy law would be helpful, as there are federal rules of procedure worded much like Bankruptcy Rule 9006(b)(1) which give courts discretion to enlarge time periods set by rules, upon a finding of excusable neglect. Have the courts used those other federal rules to enlarge filing deadlines set by federal statutes? Briefs on this matter must be filed and served by **April 14, 1998**. The Court will consider the briefs carefully and issue a ruling promptly.

See also 222 B.R. 389.